Succession of Wilson.

12 593
47 1213
12 593
52 856

## State v. Slave King.

The accused, a slave, was prosecuted under the 6th Section of the Act of 1843, and convicted of stabbing, with intent to kill one Smith, a white man. The Act under which he was indicted, was re-en- acted in 1855. (See Act, p. 50, Sec. 4.) The same Statute was re-enacted *verbatim*, by the Act of 19th March, 1857. By Section 43, of the latter Act, it was declared "That all laws, or parts of laws, conflicting with the provisions of this Act, and all laws on the same subject matter, except what is contained in the Civil Code, or Code of Practice, be repealed, and that this Act shall take effect from its passage." (Acts of 1857, p. 234, Sec. 13. ) The crime charged, was alleged to have been committed anterior to the passage of the Act of 1857. *Held*, That the Statute, under which the Slave was prosecuted, was repealed by the Statute of 1857, and that the rule of law is, that when a law is repealed, before the final action of the appellant's court, the prosecution must be dis- missed.

In construing penal Statutes, courts cannot take into view the motives of the law-giver, further than they are expressed in the Statute.

Where a Statute re-enacts a law, and repeals all other laws upon the same subject matter, the former laws will be considered as suspended. The promulgation of the re-enacted law, and the repealing provision at the same time, will not have the effect to continue the old law in force, until the new law goes into operation.

APPEAL from a Justice's Court of the Parish of Morehouse.
*F. P. Stubbs*, District Attorney, for the State. *C. H. Morrison*, for defendant.

Cole, J. The slave, *King*, having been found guilty of stabbing one *Elias F. Smith*, a white man, with intent to kill, was sentenced to be hung, and has appealed.

The judgment must be reversed, for the following reasons:

This prosecution is under the 6th Section of the Act of 1843, p. 92, reënac- ted in 1855, R. S. p. 50, Sec. 4.

The same Statute is reënacted *verbatim*, by the Act of 19th of March 1857, and Section 43, of this last Act, declares, "That all laws or parts of laws, con- flicting with the provisions of this Act, and all laws on the same subject-matter, except what is contained in the Civil Code, or Code of Practice, be repealed, and that this Act shall take effect from and after its passage." Vide Acts of 1857, p. 234, Sec. 43.

The alleged illegal act of this slave, was committed anterior to the passage of the said Act of 1857, and by the repealing clause therein, all Statutes, relative to the crimes of slaves, were repealed.

Appellant has then been prosecuted and found guilty under a Statute, which

STATE
*v.*
KING.

has ceased to exist, and the general rule of law is, that when a law is repealed, before the final action of the appellate court, the prosecution must be dismissed.

In 12 L. 547, *State of Louisiana* v. *Johnson, et al, Martin,* J., says: "It is true that when an act creating an offence is repealed, even after judgment in the inferior court, the judgment must be reversed, if it has not been affirmed before the repeal. The reason of this is, that a Legislative pardon is presumed to have been intended. It is otherwise when the remedy only, is changed."

The Legislature has given its sanction to this judicial interpretation, by Sec. 127, of the Act relative to crimes and offences, p. 134, R. S. "This Act shall not operate as a discontinuance of any prosecution already commenced, nor as a bar to prosecutions for offences committed against any law in existence, at the passage of this Act."

This section would not have been enacted, if the Legislature had not believed that it was necessary, in order to give authority to courts to act on prosecutions commenced under the Statutes, that were repealed by this Act.

Besides, as the offence is charged to have been committed anterior to the Act of 19th of March, 1857, its prosecution is now barred by the prohibitions relative to *ex post facto* laws, in the Constitution of Louisiana, Art. 105, and in that of the Constitution of the United States, Sec. 9.

The Civil Code, Art. 8, declares, "A law can prescribe only for the future."

It is a well recognised doctrine, that laws regulating the form of judicial proceedings, relate to the remedy, and where, before a final decision, a new law changes the form, it must take effect at once, unless it expressly declares, that the preëxisting form shall continue to be followed in cases then pending. *Scott* v. *Duke,* 3 A., 253–693.

*A fortiori,* if the law is repealed, prosecutions under it must at once cease. Vide *State* v. *Johnson,* 12 L. 547 ; *Arnaud* v. *Executors,* 3 L. 337; Bouvier's Law Dictionary *verbo* Repeal, and the cases there cited ; Curtis' Digest of Decisions in the Courts of Common Law and Admiralty, 3 vol., p. 77.

It is urged by the District Attorney, that the reënactment *verbatim* of the former law, cannot be construed into a repeal, and that the repealing clause was only intended to repeal all laws inconsistent with this, and to revive and simplify the Statutes then in force on the subject.

Nothing would be more dangerous to the liberties of the people, than that courts should consider as the law, not Statutes in actual existence, but the motives of the Legislature.

If such was the rule, there would then be no certainty in the administration of justice: different courts would vary as to the motives of the sovereign power; in one part of the State, particular actions would be viewed and punished as crimes, and in other parts, they would be justified.

Judicial tribunals derive their power of condemnation from the Legislature, and have no more right to condemn without authorization of law, than any private individual.

Personal rights would never be secure, if courts were guided by a desire to punish and prevent crimes, without regard to the law and the legal power.

It is also argued by the District Attorney, that the reënactment and repeal, were in the same Statute, and when the Statute embracing them was approved by the Governor, and duly promulgated, they then became the law at the same moment, and there was no space of time, which elapsed between the enactment of the new and the repeal of the old law.

This may be true, but the repeal caused the old law to cease its existence: the old law had a being up to the moment of its repeal by the new Statute; after this, it was blotted from the statute book, and was without life or effect; how then can a prosecution which was commenced under the old law, before its repeal, be now conducted under it, when it is without vitality; how can this court punish by virtue of a dead Statute?

The reënactment of a Statute communicates life and vitality ·to it from the time the reënactment goes into effect, and the repeal of a Statute takes away all its life, vitality and effect, from the passage and promulgation of the Act in which it is contained.

If this new Statute merely provided a change of the mode of procedure in the trial of slaves, and had not provided that prosecutions already commenced under the old mode, should be carried on to their end, then the new law would only cause the prosecutions begun under the ancient mode to cease, and prosecutions could be again instituted under the new mode, unless barred by prescription or some legal cause.

But in the case at bar, the law itself has been repealed, which denounces as a crime, the alleged act of appellant.

We regret to be obliged to set the prisoner at liberty, but it is far wiser and safer for society, and the rights of the citizen to allow him to be liberated, than to violate a great principle in the interpretation of Statutes, which has had the sanction of the most learned and enlightened members of the judiciary.

It is, therefore, ordered, adjudged and decreed, that the verdict of the jury, and the judgment of the lower court, be avoided and reversed, and it is further ordered, adjudged and decreed, that the prosecution be dismissed, and the prisoner and appellant be discharged.

SPOFFORD, J., Concurring. I concur in the conclusion that the repeal of a penal Statute, pending a prosecution under it, without a saving clause, puts an end to the prosecution, although the penal Statute may *uno flatu* with the repeal, be substantially reënacted. Such is the current of English and American authority, by which, in criminal matters, we must be guided.

The reasoning in the case of *Holmes* v. *Wiltz*, 11 Ann., was predicated upon a civil case where doubt hung over the true construction and meaning of a Legislative Act; and to ascertain that meaning, we held ourselves at liberty to look at the history of the legislation upon its subject-matter, the mischief which was sought to be remedied, and the mode of remedy which the Legislature had avowedly adopted. The "Revised Statutes" were finished and published before the Act of March 19th, 1857, was passed. This Act stands alone to be interpreted by its own language. It is a criminal Statute, and must be construed strictly. It declares (Sec. 2, p. 229, ) "That any slave who shall, with a dangerous weapon, and with intent to kill, cut, or otherwise wound any person, or who shall attempt maliciously to kill by drowning or strangling, on conviction thereof, shall suffer death."

"Sec. 4. That if a slave shall shoot at, or stab any person with intent to kill, such slave, on conviction of either of such offences, shall suffer death."

The same Act ( Sec. 43, p. 234,) declares "That all laws conflicting with the provisions of this Act, *and all laws on the same subject-matter* * * * * * be repealed."

It is charged that the slave, *King*, on the 13th of August, 1854, with a dangerous weapon, called a butcher-knife, did cut, stab and wound, one *Elias F.*

STATE.
*v.*
KING.

*Smith*, with intent to kill. The laws upon this subject, in force at the time of the alleged offence, and which alone he could be charged with having violated, were the Acts of 1816 and 1843. "If any slave shall shoot at, *or stab* any person, with an intent to kill him or her, such slave, on conviction of either of said offences, shall suffer death : provided, always, that the presumption as to the intent, shall be against such slave, unless he prove the contrary." "Any slave, who shall, with a dangerous weapon, and with intent to kill, cut or otherwise wound any person, or who shall attempt, maliciously, to kill by drowning or strangling, on due conviction thereof, shall suffer death." Pierce, Taylor and King's Digest, 543. These laws are upon the same subject-matter, as the Sections two and four, of the Act of 1857, and being repealed without any saving clause, the prisoner accused under them, must be discharged without delay.