ODOM, Justice.
 

 The Legislature of 1938, by Act 195, page 476, created the Louisiana Milk Commission. It is provided in Section 1 of the Act that the regulation of the production, ’manufacture, and sale of milk and milk products “shall be, and the same is, hereby placed” under the supervision of the Commission.
 

 Under the same section of the Act, the Commission was given power and authority to make, publish, and enforce all regulations necessary to secure to the public a pure, clean, wholesome, and sanitary supply of milk, and such rules and regulations as might be thought necessary to promote and encourage the production of milk and the manufacture of milk products throughout the gtate. And the Commission was authorized to adopt rules and regulations “for the protection of said producers in the collection of the amounts due and to become due them from * * * distributors, wholesalers or pasteurizers of' milk, or milk products as may be deemed advisable”.
 

 By Section 3 of the Act, the Commission was authorized and empowered to make all necessary rules and regulations for carrying out the purposes of the Act, and to promulgate the same from time to time. This section of the Act specifically provides that: “any violation of such regulations shall be a misdemeanor and shall be
 
 *927
 
 punishable by fine or imprisonment or both as provided by Section 8 hereof.”
 

 Section 8 of the Act, in so far as it need be quoted, reads as follows: “That any person who shall violate any of the provisions of this Act, or any of the rules and regulations adopted by the Louisiana Milk Commission, under the provisions of this Act, shall be punished upon conviction, by a fine of no less than Ten Dollars, nor more than Two Hundred Dollars, or by imprisonment in the parish jail for no less than ten days nor more than six months, or by both, such fine and imprisonment at the discretion of the Court.”
 

 Following the adoption of this Act, the Milk Commission made and promulgated the following regulation: “It shall be unlawful for any person, firm or corporation engaged as a distributor, pasteurizer or manufacturer, of milk or milk products, as herein defined, to, engage in such business and or to buy milk from any producer, without «having first posted a bond, with the commission in a sufficient amount to cover at least fifteen (15) days’ shipment of milk, to be computed by the commission, on the average of the three months immediately preceding the date of such bond; said bond to be executed by a surety company authorized to do business in Louisiana, as surety thereon.”
 

 These defendants were indicted for violating this rule, the indictment setting out that they, being engaged as distributors, pasteurizers, and manufacturers of milk and' milk products, “did then and there wilfully arid Unlawfully buy milk from a producer/ without having first posted a bond with the Louisiana Milk Commission in a sufficient amount to cover at least fifteen days’ shipment of milk computed by the commission on an average of the three months immediately preceding the date of the demand by the Louisiana Milk Commission for the said bond, in violation of the Rules and Regulations of the Louisiana Milk Commission adopted in accordance with the provisions of Sections 1 and 3 of Act 195 of 1938.”
 

 It is thus clear that, although the Act in Section 6 specifically laid down certain rules and regulations relating to the production, sale, and handling of milk and milk products, the defendants were not indicted for violating these legislative provisions, but were indicted for violating “the Rules and Regulations of the Louisiana Milk Commission”.
 

 Defendants filed motions to quash the indictments on the ground that the rule or regulation of the Milk Commission making it unlawful for distributors or pasteurizers of milk to engage in such business or to buy milk from a producer without having first posted a bond to cover at least 15 days’ shipment of milk, and that part of Act 195 of 1938 upon which said regulation was based, are both unconstitutional and therefore void, because they violate Section 1, Article II, and Section 1, Article III, of the Constitution of 192Í, in that the Act transfers and delegates to the Milk Commission functions wholly legislative, which, under the Constitution, “the Legislature must exercise and perform itself, and which cannot be delegated to a subordinate State agency’’. In other words,
 
 *929
 
 defendants challenge the constitutionality of the rule or regulation adopted by the Milk Commission, on the ground that the Legislature could not validly delegate to the Milk Commission the power to declare and provide what conduct on the part of an individual shall constitute a misdemean- or, it being defendants’ contention that legislative power for state purposes can be validly exercised only by the Legislature itself and cannot be constitutionally delegated to some subordinate board. It was pointed out that the Constitution has not, by any general or special ordinance, authorized the Legislature to create the Louisiana Milk Commission and to endow it with legislative powers.
 

 The motions to qitash were overruled, and the defendants were brought to trial. They were convicted'and sentenced. From the conviction and sentence they appealed.
 

 The sole question presented to us by this appeal is whether or not the rule or regulation adopted by' the Milk Commission, making it unlawful for-any person engaged as distributor, pasteurizer, or manufacturer of milk or milk products to engage in such business or to buy milk from a producer without -first posting a bond with the Commission, is constitutional. If that rule or regulation is invalid, then the indictments are invalid, and the prosecution must fall.
 

 Whether that rule of the Commission is valid or not depends upon whether the Legislature exceeded its constitutional authority in delegating to the Commission the authority to declare what conduct on the part' of an individual shall be unlawful.
 

 The constitutionality of the Act as a whole has not been attacked in this proceeding. The defendants have challenged only that part of it which delegates to the Commission the power and authority to declare unlawful , certain conduct of individuals, which conduct would otherwise be innocent or harmless.
 

 Section 1, Article II, of the Constitution declares that “The powers of the government of the State of Louisiana shall be divided into three distinct departments— legislative, executive, and judicial”. Section 1, Article III, reads as follows: “The legislative power of the State shall be vested in a Legislature, which shall consist of a Senate and a House of Representatives.”
 

 If to engage as dealer in milk products or to buy milk from a producer without first posting a bond is unlawful, it is so because the Milk Commission has said so, and not because the Legislature itself has denounced such conduct as unlawful.
 

 In State v. Gaster, 45 La.Ann. 636, 12 So. 739, 740, this court said: “All crimes in Louisiana are statutory, and there can be no crime which is not defined and denounced by statute. The determination and definition of acts which are punishable as crimes are purely legislative functions, which cannot be delegated to, or exercised by, the judiciary.”
 

 In that case, the defendant was prosecuted for committing a misdemeanor in office, as denounced by Section 869 of the Revised Statutes (Act 120 of -1855). That section of the Revised Statutes, as it then
 
 *931
 
 read, provided that: “If any judge, justice of the peace, sheriff or other civil officer, shall be guilty of any misdemeanor in the execution of. either of their respective offices, he shall on conviction suffer fine or imprisonment, or both, at the discretion of the court.”
 

 The defendant was a member of the police force in New Orleans. The indictment against him set out that it was his duty as such officer to arrest, either with or without a warrant, all persons found in the act of violating any law of the state; that he had actual knowledge that one Emile Bauman kept his saloon open on Sunday, in violation of the so-called “Sunday Law” of the state, and that defendant “did then and there unlawfully neglect and refuse to arrest the said Emile Bauman”.
 

 Defendant moved to quash the indictment on several grounds, one of which was: “That, if said information is based on section 869 of the Revised Statutes, then and in that case said statute is null and void, and contrary to the constitution of the state of Louisiana, in this: That the said statute neither specifies or defines any crime known to the laws of the state.”
 

 The motion to quash was overruled, and defendant was convicted and sentenced. On appeal, this court sustained the motion to quash and set the conviction and sentence aside on the ground that Section 869 of the Revised Statutes does not say what acts constitute the crime denounced, thus imposing upon the judiciary “not only the judicial task of apportioning * * * what shall be the punishment, but also the legislative duty of declaring what acts shall be misdemeanors”.
 

 The court in the course of its opinion said: “This statute denounces as a crime,on the part of civil officers, ‘any misdemeanor in the execution of their respective offices.’ It does not, on its face, undertake to define, in any manner, what acts are misdemeanors in office, and, unless there is some other law which furnishes such definition, there is no other source to which we may look for it, except to the discretion of the judiciary, which, in each case brought before it, will be vested with determining whether or not the particular acts charged, ranging from the most trivial to the most serious derelictions, from the most malicious infractions of duty to the most innocent errors of judgment, shall or shall not be punished as crime. This would operate a delegation to the judiciary of powers purely legislative, in flagrant violation of the constitutional prohibition.”
 

 In State v. Smith, 30 La.Ann. 846, the defendant was convicted of the crime of incest, as denounced by Section 789 of the Revised Statutes, which provides that: “Whoever shall commit the crime of incest shall, on conviction thereof, suffer imprisonment at hard labor for life.”
 

 Counsel for defendant requested the court to charge the jury “that as incest was not a crime at common law, or defined thereunder in 1805 and previously, no conviction could be had under the statutes of this State”.
 

 The court refused to give the charge, and on appeal th'is court set the conviction and sentence aside, holding- that: “The
 
 *933
 
 crime of incest, although denounced, is not defined by any statute of Louisiana, and hence, there can be no conviction for incest under the laws of this State.” (Par. 2, Syllabus.)
 

 In State v. Desforges, 47 La.Ann. 1167, 1213, 17 So. 811, 818, the court quoted with approval the following statement found in State v. Gaster, supra: “All crimes in Louisiana are statutory, and there can be no crime which is not defined and denounced by statute.”
 

 In State v. Comeaux, 131 La. 930, 60 So. 620, the defendant was prosecuted under Act 202 of 1912, denouncing the crime of “indecent assault”. The indictment was quashed in the lower court on the ground that the act did not define the crime sought to be punished. The State appealed, and, in affirming the judgment, we said: “As all crimes in Louisiana are statutory, there can be no crime which is not defined and denounced by statute. And, as Act N. 202 of 1912 does not define the crime of indecent assault, there is no such crime provided for by statute of this state. It therefore follows that the action of the trial court in quashing an indictment found under- that act decided correctly, and the judgment appealed from will be affirmed. State v. Smith, 30 La.Ann. 846; State v. Gaster, 45 La.Ann. 636, 12 So. 739.”
 

 These cases and others which might be cited firmly establish the rule that all crimes in Louisiana are statutory and that there can be no crime “which is not defined and denounced by statute”. The same is true as to misdemeanors.
 

 Another equally well established general rule is that legislative power to create and define offenses against the state cannot be delegated. In City of Shreveport v. Price et al., 142 La. 936, 77 So. 883, 886, this court said: “The general rule is that legislative power cannot be delegated. An exception to that rule .is recognized in the case of municipal corporations, to which the legislative power may be delegated in whatever measure may be justified by the exigencies of local government; by necessity, or greater convenience in the administration of public affairs.”
 

 The court quoted with approval the following text from 12 C.J. 859: “Authority to define offenses against the state and to designate what acts shall be punishable as such cannot be delegated.”
 

 The court also cited with approval 12 C.J. 861, where we find the rule stated to be that: “In the absence of express constitutional sanction, however, legislative powers that are not essentially municipal in character may not be delegated to the municipal authorities.”
 

 The court also qüoted with approval the following from Cooley Const.Lim. 211: “Whenever the municipality shall attempt to exercise powers not within the province of local self-government, whether the right to do so is claimed under express legislative grant, or by implication from the charter, the act must be considered as altogether ultra vires, and therefore void.”
 

 It is thus seen, as was held in the Price case, that, whereas -the Legislature
 
 *935
 
 may delegate to municipal corporations authority to define offenses, it may do so only as to such measures as may be justified by the exigencies of local self-government or for convenience in the administration of public affairs.
 

 Municipal corporations are subdivisions of the state, created by the sovereign, and are state agencies, chartered for the purpose of discharging some of the functions of government. They are branches of the state government, established “for the purpose of aiding the Legislature in making provision for the wants and welfare of the public within the territory for which they are organized”. They are merely “instrumentalities of the state for the better administration of the government in matters of local concern”. They are established to share in the government of the country. They are governmental institutions, designed to create local government over a limited territory. They are parts of the state government-, exercising delegated political powers for public purposes. See Words and Phrases, “Municipal Corporations”.
 

 Municipal corporations are more than mere subordinate state boards. Now if, in the absence of express constitutional sanction, legislative powers that are not essentially municipal in character may not be delegated to municipal corporations, it would be going too far to say that the Legislature could, without constitutional sanction, delegate to a subordinate state board the power to declare what conduct is unlawful ■ or what shall be an offense against the state.
 

 In State v. Billot, 154 La. 402, 97 So. 589, the accused was indicted for killing a wild deer during the closed season. His defense was that there was no statute of the state fixing an open or closed season for killing wild deer. The defense was sustained by this court, although the Conservation Commission had fixed an open and a closed season, under authority delegated to it by the Legislature, by Act 204 of 1912, which authorized the Conservation Commission to fix the open season during which wild deer might be killed and to vary the season to suit conditions in the different parishes.
 

 The defendant rested his case upon the proposition “that the Legislature cannot delegate to a branch of the executive department of the government the power to enact laws”.
 

 This court, disposed of the case by saying: “As the Legislature has not fixed an open season in which wild deer may be killed or a closed season in which they may not be hunted, it follows that no statute of the state has been violated, and, as the Legislature could not vest the conservation commission with legislative power, the indictment against the accused must fall.”
 

 In State v. Watkins, 176 La. 837, 147 So. 8, 9, the constitutionality of Act 238 of 1932 was challenged on the ground that it delegated to the electors authority to repeal the Hood Law (Act 39, Extra Session of 1921). The act was held to be unconstitutional on the ground, as stated by the court, that: “it is settled that the legislative power conferred upon the Legislature, under constitutional provisions like
 
 *937
 
 those, of the Constitution of Louisiana, cannot be by the Legislature delegated to the electors, or to any other body or authority.” Citing Cooley’s Constitutional Limitations, 8th Ed., vol. 1, pp. 224, 238, 239, 240, 242, 244; 12 C.J. § 323, pp. 839 and 840; § 324, pp. 841 and 842; R.C.L., § 165, p. 164; § 166, p. 165; § 167, pp. 166, 167, 168.
 

 The rulings of this court are uniform in upholding the above stated general principles.
 

 • The ruling in State v. Snyder, 131 La. 145, 59 So. 44, is not inconsistent with the ruling in the above cited cases. In the Snyder case, the defendant was prosecuted for violating a regulation contained in the Sanitary Code prepared and promulgated by the State Board of Health, which regulation prohibited the use of saccharin in any food or product. Section 3, Act 98 of 1906, made it a misdemeanor for any person to violate the provisions of the Sanitary Code.
 

 The defendant challenged the constitutionality of the regulation made by the State Board of Health, on the ground that the Legislature could not validly delegate to that board the power to declare and provide “what conduct shall constitute a crime”. The court said this contention would be well founded if it were not for Article 296 of the Constitution (of 1898), which reads as follows: “The General Assembly shall create for the State, and for each parish and municipality therein, Boards of Health, and shall define their duties, and prescribe the powers thereof.”
 

 The ruling of this court upholding the prosecution was based upon the court’s finding that the legislative delegation of authority to the State Board of Health, to make such rules and regulations as the board might deem advisable, was specifically authorized by the Constitution itself. The opinion shows that the court- would not have upheld the prosecution had it not been for the specific authorization to the Legislature, found in Article 296 of the Constitution of 1898.
 

 The Snyder case was followed and reaffirmed in Board of Health v. Susslin, 132 La. 569, 61 So. 661.
 

 Counsel for the State say in their brief that the statement in the Snyder case, that “The contention of defendant would be well founded if it were not for Article 296 of the Constitution”, was unnecessary and “is hence purely obiter dictum”.
 

 Counsel are mistaken. If it had not been for the specific delegation to the Legislature found in that article of the Constitution, it would have been necessary for the court, in making the ruling it did, to overrule the cases of State v. Gaster, State v. Smith, and State v. Desforges, supra.
 

 The cases cited by counsel for the State in their brief are not pertinent to the sole issue here involved. The cases cited have to do mainly with the question as to whether the Legislature may regulate and control the production of milk and milk products, and provide for the fixing of prices. They cite quite a number of milk-control and price-fixing cases. But none of them relates to the question as to whether or not the Legislature may delegate to a board or agency authority to declare what shall
 
 *939
 
 be unlawful or to define what shall constitute a crime or a misdemeanor.
 

 Counsel for defendants attacked Act 195 of 1938 on other grounds which we think it unnecessary to. discuss.
 

 For the reasons assigned, it is adjudged and decreed that those parts of Sections 3 and 8 of Act 195 of 1938, which provide that the violation of the rules and regulations of the Louisiana Milk Commission shall constitute a misdemeanor, are unconstitutional and therefore void; and that the rule or regulation of skid Milk Commission, which makes it unlawful to engage as a distributor, pasteurizer, or manufacturer of milk or milk products or to buy milk from a producer without first having posted bond with the said Milk Commission, is likewise unconstitutional and void. The judgment appealed from, overruling the motion to quash and convicting defendants, is reversed; the motion to quash is sustained, the conviction and sentence of the accused are set aside, and they are ordered released.