HIGGINS, Justice.
 

 The district attorney filed an information in which the defendants were charged with having attempted “ * * * to corrupt a juror, namely, Ben H. Crawford, in the
 
 *1147
 
 trial of a criminal case then on trial in the Fourth Judicial District, Parish of Ouachita, State of Louisiana, and styled State of Louisiana v. Jimmy Rhodes, bearing No. 22,777 on the Criminal Docket of said Court, by making the following request, to wit: ‘Ben,,if you can throw any favors to Jimmy Rhodes, I wish you would,’ he, the said Ben H. Crawford, being at the time on and a member of the Petit Jury, duly sworn and engaging in the trial thereof, the defendant in said case being Jimmy Rhodes, charged with Involuntary Homicide.”
 

 The accused filed a motion to quash the information on the ground that it did not charge any offense known to or denounced by the laws of Louisiana.
 

 The district judge sustained the motion to quash and discharged the defendants. The State applied to this Court for a writ of certiorari, which was granted, and the matter is now before us for review.
 

 The information is predicated on Article 786 of Dart’s Criminal Statutes, or Section 861 of the Revised Statutes of 1870, which reads as follows: “Every attempt to corrupt or awe jurors in the trial of any cause, either civil or criminal depending [pending] in any court in this state, by menaces, threats, giving money, or promise of any pecuniary advantage or otherwise, shall on conviction be fined not less than one hundred nor more than five hundred dollars, and imprisoned not less than six months nor more than two years. If any juror shall take any reward from either of the parties in a cause as aforesaid, or from any other person, he shall on conviction thereof be punished by fine and imprisonment at the discretion of the court.”
 

 The trial judge’s per curiam reads as follows:
 

 “The statute under which this information is sought to be brought denounces as a crime every attempt to corrupt or awe a juror in the trial of any cause by menace, 'threats, giving money or promise of any pecuniary advantage, or otherwise. The •information here sought to be quashed charges that the accused attempted to corrupt a juror engaged in the trial of a case by saying to him, ‘Ben, if you can throw any favors to Jimmy Rhodes, I wish you would.’ It is to be noted that there is no charge of any attempt to awe.
 

 “It is the opinion of this Court that the words ‘to corrupt,’ as applied to a juror or the occupant of any office or position of trust, means a degradation of character or the loss of a sense of honor, a debasing and moral unfitness for the duties required of his position. Tb cause one, or attempt to cause one, to acquire such unfitness or state of being, it is necessary that some inducement, reward or hope of reward or advantage, be held out. A mere request or solicitation, unaccompanied by any offer of any advantage or hope of such, could not be defined as an attempt to otherwise corrupt. One may be induced or persuaded' and yet riot corrupted. A juror may be solicited to do what he should not do, and yet not be corrupted. The law makers recognized this distinction by using the word ‘awe’ and denounced as a crime an
 
 *1149
 
 attempt to awe. One may be awed and yet not corrupted.
 

 “All criminal statutes must be strictly construed and in the construed penal statutes Courts cannot take into view the motives of the law makers but that are expressed in the statutes. To solicit a juror in the manner as here charged is most assuredly an act that invades the very safeguard of our social order, and is a defect in our criminal jurisprudence requiring Legislative remedy.
 

 “With regret the Court finds itself forced to sustain the motion to quash.”
 

 In United States v. Reese, 92 U.S. 214, 220, 23 L.Ed. 563, the United States Supreme Court said: “Every man should be able to know with certainty when he is committing a crime. * * * It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large. * * * ”
 

 In the case of State v. Gardner, 151 La. 874, 92 So. 368, 369, this Court considered the provisions of Act No. 57 of 1908, generally referred to as the “Locke Law,” the title of which reads: “An act to prohibit gambling on horse races by the operation of betting books, French mutual pooling devices, auction pools, or any other device, and to provide penalties for the violation of the provisions thereof.”
 

 The Court stated that the charge against the defendánt was that he “did by a certain device * * * encourage, promote, aid and assist the general public, and certain persons * * * to bet and wager upon certain horse' races * *
 

 The accused filed a demurrer to the information on the grounds, first, that it set forth no crime known to our law, and second, that all that portion of said Act, which reads, “or shall, by any other device, encourage, promote, aid or assist any person or persons to bet or wager upon a horse race or races * * * shall' be • guilty,” did not define the offense sought to be denounced.
 

 In holding that the demurrer was good and properly sustained by the district court,' this Court stated:
 

 “IV.
 

 “As the statute declares any- person guilty of an offense who shall ‘by any other device, encourage, promote, aid or assist any person or persons to bet or wager,’ etc., and the information charges that this defendant ‘did, by a device and devices, encourage, promote, aid and assist the general public, and certain persons * * * to bet and wager,’ etc., it follows that the information charges the alleged offense in the very words of the statute, so that the information suffices to charge the offense, if the statute itself suffices to create such an offense. And that brings us to the second phase of the demurrer.
 

 “V.
 

 “To define something is essentially to mark the limits and fix the meaning thereof ‘in such manner that the definition will not apply to any other object than that de
 
 *1151
 
 fined.’ Bermudez, C. J., in McDougall v. Monlezun, 38 La.Ann. [223] 229.
 

 “And if the word ‘device’ as used in the statute for the second time should he taken in connection with its use therein for the first time, to wit, ‘French mutual pooling device,’ and under the rule ejusdem generis, be taken to mean some device of similar character (and we think it must), then the statute is not open to the objections leveled against it.
 

 “But if the word ‘device,’ when used for the second time as aforesaid, is to be given the^ meaning contended for by the state, to wit ‘a plan adopted for the accomplishment of a certain purpose, and generally * * * for accomplishing that purpose by indirection, and implies cunning and deceit,’ then the second part of the statute is open to both objections.
 

 “For ‘device’ does not necessarily, or even primarily imply cunning or deceit or indirection. And in the statute before us there is nothing whatever to indicate that cunning or deceit or indirection is an element of any offense thereunder.
 

 “Hence the second part of the statute, if the word ‘device’ is to be taken in a wider sense, makes it an offense for any person, by any device (or plan or means), to encourage or assist any other person to bet or wager on a horse race, and is sufficiently broad to include any person who (for instance) publishes or circulates any racing chart or information about races to be run, with the weights and entries, the previous performances of the horses, the betting odds, probable winners, etc. For if such information does not encourage, it at least assists in betting and wagering on horse races. Nor is it to be doubted that maintaining a race course, with betting ring and all the other paraphernalia thereof, is a plan or device to encourage and assist in betting and'wagering on horse races.
 

 “And it is to be observed that the second part of the statute does not require that the person who encourages or assists shall himself take any part in the betting. It suffices that he encourage or assist another to bet or wager.
 

 “And thus we have an offense so broad as to include a host of persons, who now have no thought or conception that their acts are unlawful, and whose number can be limited only at the will and according to the opinion of juries and judges, as to who should and who should not be punished under the statute; and an offense, to wit, ‘encouraging and assisting to bet or wager,’ which is not covered by the title of the statute, indicating a purpose only to prohibit gambling ‘by the operation of betting books, French mutual pooling devices, auction pools, or any other device.’ ”
 

 It has long been the rule, constantly adhered to, that criminal statutes must receive strict interpretation, and that such statutes cannot be extended to cases not included within the clear import of their language. In short, that no act is a crime, which is not clearly and unmistakably made a crime by statute. State v. Slave King, 12 La.Ann. 593; State v. Peters, 37 La.Ann. 730; State v. Gaster, 45 La.Ann. 636, 12 So. 739; State v. De Hart, 109 La. 570, 33 So. 605; State v. Breffeihl, 130 La, 904, 913, 58 So. 763, 40 L.R.A.,N.S.,
 
 *1153
 
 535; State v. Comeaux, 131 La. 930, 60 So. 620; State v. Leroy, 143 La. 186, 78 So. 441; State v. Williams, 173 La. 1, 136 So. 68.
 

 Unless an act can be brought within the meaning of the words of a criminal statute, it is not a crime, though it comes within the mischief sought to be remedied, and is of equal atrocity with the acts enumerated and denounced by the statute. State v. Fontenot, 112 La. 628, 36 So. 630; State v. Brinson, 149 La. 320, 89 So. 18.
 

 In their report to the Governor, the members of the Criminal Code Commission, appointed under the Constitutional Amendment adopted November 2, 1926 (Act No. 262 of 1926), recognized that there were “no satisfactory laws dealing with tampering with jurors” (see page 563 of the Code of Criminal Procedure of Louisiana [Dart]), as there were in the case of tampering with witnesses (R.S. § 880, Article 787, Code of Criminal Procedure [Dart’s Criminal Statutes]), and so the members of the Commission drafted and incorporated in the Code, Article 362, making “any attempt to influence the action of a jiiror, * * * either by persuasion, threats, the payment of money or the giving of anything of value or by asking him to give the defendant the benefit of the doubt, or by any other means, *
 
 * * ”
 
 an offense. Article 362 of the Code deals with a substantive and not a procedural law.
 

 In a similar situation, this Court in the case of State v. Rodosta, 173 La. 623, 138 So. 124, held that Article 238 of the Code of Criminal Procedure was unconstitutional because it dealt with a substantive law and the Legislature was only authorized by the Constitutional Amendment, adopted November 2, 1926 (Act No. 262 of 1926), to enact procedural laws. Apparently, the district attorney was familiar with the above case and, therefore, did not charge the defendants under Article 362 of the Code of Criminal Procedure, but under Article 786 of Dart’s Criminal Statutes.
 

 In the case of State v. Maitrejean, State of Louisiana v. Henry J. D Harris and C. M. Rhodes, 192 So. 361, we recently held that the provisions of the statute in question there and the regulation of the Board adopted thereunder were both unconstitutional, being an illegal delegation of a legislative function in that the members of the Milk Commission were authorized to adopt penal regulations. We pointed out that only the Legislature, under the Constitution, was granted the power and authority to define what acts constituted criminal offenses and to provide the penalties for the violation thereof. So that, in the instant case, to construe the words “or otherwise,” as used in Article 786 of Dart’s Criminal Statutes, as the State has asked us to do, would be indirectly authorizing the various judges, district attorneys, grand jurors and petit jurors to define what acts they considered were prohibited by these two words of the statute. This, of course, would lead to a result equally as unsatisfactory as the present unfortunate situation, which results from the statute being inadequate to cover all cases where persons attempt to unduly influence jurors in the just and honest performance of their official duties.
 

 
 *1155
 
 The request by a person of a juror that “he throw,” if he can, “a favor” to an accused, is not a menace; it is not a threat; it is not the giving of money; it is not a promise of any pecuniary advantage, or the promise of any other kind of advantage, nor is such a request calculated to change one from a “state of uprightness” to a “worse state,” to a “state of depravity,” and, therefore, the offense laid in the information is not within the letter of the statute.
 

 The observation of the learned trial judge that it is regretted that the statute is insufficient to cover all the reprehensible ways of tampering with jurors, and that the Courts were powerless to remedy this situation, as the matter is one which addresses itself to the Legislature, is appropriate and reiterated by us.
 

 For the reasons assigned, the judgment of the district court, sustaining the motion to quash and discharging the accused, is affirmed.