14 So.2d 778

**STATE v. SANFORD et al.**

No. 37097.

June 21, 1943.

Cawthorn & Golsan, of Mansfield, for relator.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Sp. Asst. Atty. Gen., and Edwin M. Fraser, Dist. Atty., of Many, for the State.

HIGGINS, Justice.

The four defendants were jointly tried and convicted by the district judge, under the provisions of Act No. 227 of 1934, for disturbing the peace. The judge sentenced each of them to pay a fine of $15 and the costs of the prosecution, and, in default of payment of the fine and the costs, to serve a period of thirty days' imprisonment in the Parish Jail. They applied to this Court, under its supervisory powers, for writs of certiorari, prohibition and mandamus. We granted the writs.

The defendants rely upon two bills of exception, which were reserved when the district judge overruled their motions in arrest of judgment and for a new trial.

The indictment charges that, on April 11, 1942, the accused, with two other parties, who were acquitted, "* * * did wilfully and unlawfully go into and near the Town of Logansport, DeSoto Parish, Louisiana, and upon the public streets and highways of said Town, and into the private dwellings of said Town, and conduct themselves in a manner calculated to dis-

turb and alarm the inhabitants thereof and the persons present, contrary to the form of the statute of the State of Louisiana, '* * *."

Act No. 227 of 1934 provides: "Section 1. Be it enacted by the Legislature of Louisiana, That any person who shall go into any public place, into or near any private house, or along any public street or highway near to any private house, or elsewhere, and who shall use loud and vociferous or obscene, vulgar or indecent language, or swear or curse, or expose his person, or rudely display or wantonly or maliciously discharge or use any pistol or other deadly weapon in such public place, or upon such public street or highway, or near such private house, or elsewhere, *or who shall do any other act, in a manner calculated to disturb or alarm the inhabitants thereof, or persons present,* shall, on conviction thereof before any court of competent jurisdiction, be condemned to pay a fine not exceeding fifty dollars, and in default of the payment of the same to be imprisoned for not less than ten days nor more than thirty days, or shall suffer both such fine and imprisonment at the discretion of the court; provided, that the provisions of this section shall not be construed so as to divest the recorders' courts, or city courts, of incorporated cities of jurisdiction to summarily try and punish the same acts when prohibited under the police regulations of such cities." (Italics ours.)

The facts, as found by the trial judge from the evidence, are substantially, as follows:

The defendants are members of Jehovah's Witnesses, a religious sect; that on Saturday, April 11, 1942, they, with other members of their faith, including women and children, approximating 30 in number, motored in a group from the Texas border into the town of Logansport, DeSoto Parish, Louisiana; that each person, carrying a supply of their religious publications, magazines and tracts, then left his automobile and proceeded to the main streets of the town; that the streets were fairly crowded and that each of them stopped certain persons as they passed by; that each of them handed out their tracts and magazines to the citizens he contacted and requested that the persons subscribe to the magazine or, otherwise, make a contribution to the Jehovah Witnesses; that in the event neither a subscription was obtained nor a contribution made, each person approached was given a copy of the religious magazine or tract, upon promising to read it, and in some instances, without the promise being made; that each contact was made in the same manner as each of the defendants separately selected persons as they walked on the streets; that the actions of the defendants were not in any manner unlawful in themselves but that each of the defendants knew that the Mayor and the police officers of the Town of Logansport had previously told them that their presence and activities would cause trouble among the population and asked them to stay away from the town; that the Jehovah Witnesses had been practicing their religion in this section of the State for about nine years without any previous trouble; that a portion of the

religious belief and creed of the defendants as Jehovah Witnesses is that it is contrary to the Holy Scriptures to bow down to a graven image and that to salute the Flag of the United States would be a violation of this Divine Law; that the advancement of this doctrine of their religious belief and creed was not a part of their missionary work or evangelism and was not preached or taught to the public and was ineffective unless the person was first converted to and accepted their religion; that the defendants had not requested anyone to refuse to salute the flag and had not refused to salute the flag themselves on the occasion in question nor were their actions and conduct unlawful; that the trial judge found them guilty on the ground that the feelings and thoughts of the people of Logansport toward the doctrine of the religion of the Jehovah Witnesses were such that the combined presence of these defendants in the town and their actions as above described might or would tend to incite riotous and disorderly conduct; and that having been previously warned by the authorities to remain away from Logansport, their actions in returning and circulating their religious literature were calculated to disturb and alarm the inhabitants thereof and the persons present on the streets.

The trial judge in his return to this Court does not take issue with the statement of facts developed in his court and presented in connection with the motions in arrest of judgment and for a new trial and he shows that the defendants were not convicted of any of the acts defined by the Legislature as constituting a disturbance of the peace, but were convicted of other general or undefined acts; that he states he disregarded religious consideration of the case and found them guilty of disturbing the peace because they returned to the streets of the town after being warned by the Mayor and the Chief of Police that they would not be permitted to solicit contributions and sell and distribute their literature, as, in doing so, they would cause a disturbance among the people of the town who did not share in their religious views; that he, therefore, concluded that their presence on the streets was due more to their "intent to show they could do as they pleased and disregard the rights of the community" rather than to carry on their religious work; and that he considered the statute applicable and constitutional.

The defendants pleaded that their acts were lawful and in no way violated the provisions of Act No. 227 of 1934, under which they were charged with disturbing the peace, and that the statute was inapplicable to their acts and conduct, but that, if the Court should conclude that the statute was applicable, then it was unconstitutional, because it violated Section 4 of Article I of the Constitution of Louisiana, guaranteeing freedom of speech, of the press and of religion, Amendment 1 of the Constitution of the United States granting them the same rights, and the Fourteenth Amendment of the Constitution of the United States, which guarantees them due process of law.

It is clear that the defendants neither individually nor collectively committed any of the acts defined in the statute that constitute a disturbance of the peace. The indictment charged that the defendants went upon the public streets and highways of the town and "conducted themselves in a manner calculated to disturb and alarm the inhabitants thereof and the persons present." In short, they were charged under the general portion of the statute which does not define the "conduct or acts" the members of the Legislature had in mind.

The record shows that the defendants went about their religious missionary and evangelistic work in an orderly, peaceful and quiet way and did not demand or insist that the persons approached either listen to them or make a contribution. Briefly, their acts and conduct were lawful and orderly and did not tend to cause a disturbance of the peace. The Mayor and the Chief of Police had no legal right to insist that these defendants forego either their religious beliefs and works, or remain away from the town, as long as they conducted themselves in a lawful and orderly manner. Of course, the fact that one entertains certain religious beliefs and is conducting religious work does not give him any right or immunity to violate the law. The issue involved is whether or not the defendants conducted themselves in any way which disturbed or tended to disturb the peace, aside from their religious beliefs and works. Religious beliefs cannot in themselves be made the sole and only basis for finding a defendant guilty of disturbing the peace when he has not other-

wise been guilty of any act or conduct in violation of the law. The Mayor and the Chief of Police had no more right to prevent the members of Jehovah's Witnesses from appearing on the streets and publishing their religious views and conducting their religious work than they had the right to prevent the members of other religious denominations from doing likewise.

In the case of Cantwell v. Connecticut, 310 U.S. 296, 311, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352, the defendant was charged with disturbing the peace under a State statute and the Supreme Court affirmed the judgment of the lower court finding the accused guilty and holding that the statute was constitutional. The facts in that case show that the defendant's acts were highly provocative of trouble because he was not only propagating and disseminating the religious views of Jehovah's Witnesses but was approaching members of the Roman Catholic Church on Cassius Street in a thickly populated neighborhood (where nearly 90 per cent of the residents were of that faith) and reproducing, on a phonograph, an address made by a leader of his church denouncing Catholicism. The Supreme Court of the United States annulled the conviction and held that the statute as construed by the State court violated the provisions of the Constitution of the United States guaranteeing freedom of religion, of the press and of speech.

In the case of Thelma Martin v. City of Struthers, 63 S.Ct. 862, 863, 87 L.Ed. ——, decided by the Supreme Court of the United States on May 3, 1943, the defendant was convicted in the Mayor's Court for vio-

lating a City Ordinance prohibiting any person from ringing a door bell or sounding a door knocker, or otherwise summoning the inmates of any residence to the door for the purpose of receiving handbills, circulars or other advertisement. The accused was espousing the religious cause of Jehovah's Witnesses and went to the home of strangers, knocking on the doors and ringing door bells, in order to distribute to the occupants of the homes leaflets advertising a religious meeting. "She proceeded in a conventional and orderly fashion." The conviction and sentence were upheld by the Supreme Court of Ohio and the matter was appealed to the Supreme Court of the United States, which held that the City Ordinance violated the Federal Constitution guaranteeing freedom of speech and of the press.

The prosecution relies upon State v. Martin, 199 La. 39, 5 So.2d 377. In that case the defendants, who were members of the same religion as the defendants in the instant case, went upon the property of the prosecuting witness and although politely requested to leave, refused to do so and insisted upon remaining on the premises and soliciting and canvassing among the employees of the land owner. We held that the mere fact that they were conducting missionary work of a religious nature did not give them the right over the objections and protests of the land owner to remain upon the property and that, therefore, they were guilty of trespassing.

The application of the statute by the trial judge to the facts of this case and his construction thereof would render it unconstitutional under the above Federal authorities. Furthermore, to construe and apply the statute in the way the district judge did would seriously involve its validity under our State Constitution, because it is well-settled that no act or conduct, however reprehensible, is a crime in Louisiana, unless it is defined and made a crime clearly and unmistakably by statute. State v. Whitlock, 193 La. 1044, 192 So. 697; State v. Maitrejean, 193 La. 824, 192 So. 361, and State v. Williams, 173 La. 1, 136 So. 68. It is our opinion that the statute is inapplicable to this case because it appears that the defendants did not commit any unlawful act or pursue an unlawful or disorderly course of conduct which would tend to disturb the peace.

The question of whether or not the Legislature of the State has the constitutional right to pass a statute requiring all citizens to salute the Flag of the United States, regardless of religious beliefs, creeds, or doctrines, is not before this Court and we refrain from expressing any views on this subject.

For the reasons assigned, it is ordered, adjudged and decreed that the conviction and sentence of the district judge are annulled and set aside and the defendants are discharged.