LOTTINGER, Chief Judge.
The defendants, All Pro Paint and Body Shop, Inc., and William Jerry Hampton, were charged by grand jury indictment with illegal transportation of hazardous wastes, illegal storage of hazardous wastes, and illegal disposal of hazardous wastes. La.R.S. 30:2183 G(2). The defendants pleaded not guilty and waived their rights to a trial by jury. After a bench trial, they were found guilty of illegal transportation of hazardous wastes and illegal disposal of hazardous wastes. The trial court deferred the defendants’ sentencing under La.Code Crim.P. art. 893 and placed them on active supervised probation for three years. The court also applied special conditions of probation as follows: 1) pay restitution to the Louisiana Department of Environmental Quality in the amount of $13,500.00; 2) pay to the State of Louisiana $2,142.64 for expert witness fees; 3) perform 200 hours of community service; 4) pay court costs in the amount of $96.50; and 5) pay crimestoppers $250.00. The defendants have appealed, urging the following four assignments of error:
1. The trial court erred in denying the defendants’ motion to quash.
2. The trial court erred in charging itself as to the applicable law.
3. The trial court erred in finding that the evidence was sufficient to convict the defendants.
4. The trial court erred in convicting the defendants under La.R.S. 30:2183 G(2) rather than La.R.S. 30:2183 G(l).
The defendants expressly abandoned assignments of error numbers two and four.
On or about December 5, 1990, Freddie Donahue visited All Pro Paint and Body Shop, Inc., looking for scrap materials to pick up and sell. William Jerry Hampton, owner of All Pro Paint and Body Shop, páid Donahue to dispose of containers of spent paint thinner. Donahue discarded the containers at two uninhabited houses in Baton Rouge. Subsequently, the owners of the houses discovered the containers. The Louisiana Department of Environmental Quality (DEQ) and the Louisiana State Police recovered the containers and took samples of their contents. The samples were tested to determine whether or not the contents of the containers consisted of hazardous waste. The test results confirmed that several of the containers contained substances classified as hazardous waste.
ASSIGNMENT OF ERROR NUMBER THREE
Courts only rule on constitutional issues as a last resort. Therefore, it is necessary *964 that we first determine whether there is any merit to this assignment of error. The defendants argue in their third assignment of error that the trial court erred in determining there was sufficient evidence to convict them under La.R.S. 30:2183. The defendants assert that the trial court erred in concluding that the laboratory tests were sufficient proof and that the state did not prove that the spent paint thinner emanated from a container not classified as an “empty container” exempt under the regulations.
Initially, we note that, in order to challenge this conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See La.Code Crim.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
The standard of review for the sufficiency of evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La.Code Crim.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). This Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder’s determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466, 473 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
The defendants were convicted of illegal transportation and disposal of hazardous waste. The applicable elements of these offenses are set forth in La.R.S. 30:2183 G(2), which states:
Any person who knowingly transports, treats, stores, disposes of, or exports any substance in contravention of any provisions of this Chapter or the regulations or of any permit or license terms and conditions adopted in pursuance thereof, or any person who otherwise knowingly violates any provisions of this Chapter, in such manner that he knows, or should have known, at that time that he thereby places another person in imminent danger of death or serious bodily injury, shall, upon conviction, be subject to a fine of not more than two hundred fifty thousand dollars per day of violation and costs of prosecution, or imprisonment at hard labor for not more than fifteen years, or both.
Hampton admitted to police officers in a tape recorded statement that he gave Donahue approximately ten containers to dispose of for him. Hampton stated that approximately five of the containers contained spent paint thinner. Hampton acknowledged that he knew how to dispose of the containers and their contents properly and that his giving the containers to Donahue was not the correct way. Freddie Donahue testified that, in December of 1990, he went to All Pro Paint and Body Shop looking for scrap material to pick up to sell. He testified that he had previously picked up scraps from the shop. Donahue stated that on the day in question Hampton asked him if he would “like to make a little extra money, a little money for Christmas.... ” Donahue responded affirmatively. Donahue testified that Hampton then showed him the barrels and told him that if he hauled them away he would give him $100.00. Hampton told him that the barrels contained paint thinner. Donahue stated that this was the first time that Hampton had paid him to haul off scrap.
Donahue testified that Hampton told him to remove the barrels and burn them. He *965 told Hampton that he would take the barrels to where he was living temporarily and then take them to a friend’s place in St. Helena and burn the contents. Donahue testified that Hampton responded, “It don’t matter, as long as you burn it, take it and burn it.” He stated that Hampton told him not to store the barrels anywhere near fire.
Donahue testified that he made three trips in his pickup truck to pick up the barrels and one to pick up scrap parts. He stated that some of the barrels were too heavy for him to pick up, so a man with a forklift picked up some of the barrels for him and loaded them into his truck.
Donahue stated that he unloaded the barrels at a house in which he was staying on Canal Street and “another old house” behind it. He put some barrels inside the houses and some barrels on a porch. Donahue testified that he intended to take the barrels somewhere and burn them.
Donahue estimated that he picked up thirty-one containers of all different sizes. He also testified there were no other barrels at the location where he took these barrels.
L.J. Bergeron, an emergency response manager for I.T. Corporation, testified that he visited the crime scene and was working in conjunction with the State Police. He stated that he looked in all the barrels and containers and took separate samples from each container from which he was able to obtain a sample. He could obtain eighteen samples. Bergeron testified that his sampling methods are approved by the Environmental Protection Agency. These samples were later tested at Entek Environmental Laboratories.
Adrian Thomas and Armón Erwin of En-tek Environmental Laboratories conducted ignitability tests on these samples to determine their flashpoint. Erwin testified that anything with a flashpoint under 140° Fahrenheit is considered to be hazardous waste material. See La.Admin.Code 33:V.4903B(1). Of the eighteen samples tested by Entek, eleven had a flashpoint of less than 140° and were, thus, determined to be hazardous waste.
Victor Joseph Montalaro of the Department of Environmental Quality (DEQ) testified that he did composite sampling of the contents of the containers. These samples were tested at West-Paine Laboratories by Marie Swain. Swain testified that all three samples had a flashpoint under 140°. Mon-talaro also testified that about 660 gallons of spent paint thinner had been recovered from the illegal dump site, which were subsequently sent to Arkansas for proper disposal.
Lionel Harris testified that he helped load several barrels into Donahue’s truck with the use of his forklift. Several All Pro Paint and Body Shop employees testified that they saw Donahue remove barrels from the shop. However, they indicated that they saw Donahue remove a lesser number of containers than testified by Donahue.
Thomas Howard Patterson testified that he was a program manager for DEQ and the custodian of records. He stated that there was no permit on file with DEQ relative to the defendants’ ability to treat, store, or dispose of hazardous waste. He also testified there was no record on file registering the site where the containers were found as being facilities empowered by DEQ to treat, store, or dispose of hazardous waste. There was also no record of Hampton or All Pro Paint and Body Shop receiving a permit to transport hazardous waste.
The trial court’s judgments indicate that, after considering the credibility of the witnesses and weighing the evidence, it accepted the testimony of the State’s witnesses and rejected that of the defense witnesses. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every element of the offenses had been established. This Court will not address the credibility of the witnesses or reweigh the evidence. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER ONE
The defendants urge in their first assignment of error that the trial court erred in *966 denying the motion to quash. They argue that the statutory scheme under which they were convicted is an unlawful delegation of legislative authority.
La.R.S. 30:2171-2206 set forth the Louisiana Hazardous Waste Control Law. The defendants were convicted of illegal transportation of hazardous waste and illegal disposal of hazardous waste under La.R.S. 30:2183 G(2) which provides:
Any person who knowingly transports, treats, stores, disposes of, or exports any substance in contravention of any provisions of this Chapter or the regulations or of any permit or license terms and conditions adopted in pursuance thereof, or any person who otherwise knowingly violates any provisions of this Chapter, in such manner that he knows, or should have known, at that time that he thereby places another person in imminent danger of death or serious bodily injury, shall, upon conviction, be subject to a fine of not more than two hundred fifty thousand dollars per day of violation and costs of prosecution, or imprisonment at hard labor for not more than fifteen years, or both.
La.R.S. 30:2173 defines disposal, hazardous waste[1], and transportation as:
(1) “Disposal” means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any hazardous waste into or on any land or water so that such waste, or any constituent thereof, may enter the environment or be emitted into the air or discharged into any waters, including ground waters.
(2) “Hazardous waste” means any waste, or combination of wastes, which because of its quantity, concentration, physical, or chemical characteristics may cause or significantly contribute to an increase in mortality or an increase in serious irreversible or incapacitating reversible illness, or pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of, or otherwise managed. Such definition shall be applied only to those wastes identified and designated as such by the department, consistent with applicable federal laws and regulations.
[[Image here]]
(6) “Transportation” means the movement of hazardous wastes from the point of generation or storage to the point of treatment, storage, or disposal by any means of commercial or private transport. The term does not apply to the movement of hazardous wastes on the premises of a hazardous waste generator or on the premises of a permitted hazardous waste treatment, storage, or disposal facility.
In State v. Taylor, 479 So.2d 339, 341 (La.1985), discussing unconstitutional delegation of legislative authority to an executive branch agency, the Louisiana Supreme Court said:
The Louisiana Constitution provides for a separation of powers among the legislative, executive and judicial branches of government. La. Const, art. 2, § 1. La. Const, art. 2, § 2 states:
Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in any (sic) one of them, shall exercise power belonging to either of the others.
The general rule is that the legislative power cannot be delegated. State v. Rodriguez, 379 So.2d 1084 (La.1980); City of Shreveport v. Price, 142 La. 936, 77 So. 883 (1918). However, this court has recognized that the legislative branch has the authority to delegate to administrative boards and agencies of the state the power to ascertain and determine the facts upon which the laws are to be applied and enforced. State v. Rodriguez, supra; State v. Guidry, 142 La. 422, 76 So. 843 (1917). In determining whether a particular delegation of legislative authority is unconstitutional, this court has relied upon the rule established in Schwegmann Brothers Giant *967 Super Markets v. McCrory, Comissioner of Agriculture, 237 La. 768, 112 So.2d 606, appeal dismissed, 361 U.S. 114, 80 S.Ct. 207, 4 L.Ed.2d 154 (1959):
So long as the regulation or action of the official or board authorized by statute does not in effect determine what the law shall be, or involve the exercise of primary and independent discretion, but only determines within prescribed limits some fact upon which the law by its own terms operates, such regulation is administrative and not legislative in its nature.
La.R.S. 14:7 provides that a crime in Louisiana is that conduct which is defined as criminal in the criminal code, or in other acts of the legislature, or in the constitution of this state. It is well settled in Louisiana jurisprudence that the determination and definition of acts which are punishable as crimes are purely legislative function. State v. Rodriguez, supra; State v. Gyles, 313 So.2d 799 (La.1975). It thus follows that the legislative power to create and define criminal offenses cannot be delegated. State v. Broom, 439 So.2d 357 (La.1983); State v. Maitrejean, 193 La. 824, 192 So. 361 (1939). (Emphasis Supplied).
In Rodriguez, 379 So.2d at 1085, the supreme court stated “the legislative power to create and define offenses cannot be delegated.” The supreme court was more definitive when in State v. Broom, 439 So.2d at 367, on rehearing, it stated:
[T]he legislature must define felonies.
Louisiana courts have consistently followed their constitutional mandate, holding that only the legislature can perform the legislative function of defining serious criminal offenses. State v. Truby, 211 La. 178, 29 So.2d 758 (1947); State v. Williams, 173 La. 1, 136 So. 68 (1931); State v. Smith, 194 La. 1015, 195 So. 523 (1940); State v. Whitlock, 193 La. 1044, 192 So. 697 (1939); State v. Maitrejean, 193 La. 824, 192 So. 361 (1939); State v. Billot, 154 La. 402, 97 So. 589 (1923). Williams, supra, stated: “in Louisiana, all crimes are statutory, and the determination of what acts constitute crimes are purely legislative functions which cannot be delegated....”
Further, in Broom, 439 So.2d at 369, the supreme court concluded: .
Under the Louisiana Constitution of 1974, the legislature cannot delegate the right to define felony offenses to administrative bodies or department heads. The wisdom of the constitutional concept is exemplified by the vagueness of the regulations in the Louisiana Explosives Code and the lack of full legislative review for those enactments. The legislature has not only delegated to the director of public safety the authority to create felonies, it has relinquished most of the supervision over that authority to its subcommittees and the governor. Even if the delegation were constitutional, the lack of legislative direction would make the enactment procedures suspect. (Emphasis supplied).
From Broom in 1983 authored by Justice Watson on rehearing, and Taylor in 1985 authored by Justice Marcus, we conclude that the supreme court has adopted a new test as to the constitutionality of the delegation of legislative authority as it relates to felony offenses. The three prong test of Schwegmann, as enunciated in State v. Barthelemy, 545 So.2d 531, 534 (La.1989), used generally to test the validity of the delegation of legislative authority has in the instance of creating or defining felony offenses been put aside in favor of a one step test. This new test is limited to a review of the statute itself which creates or defines the felony offense. The legislature cannot delegate to the executive branch, under however stringent guidelines, the authority to fill in the details of what constitutes a felony under the statute. We are convinced this is the proper approach because of the seriousness of a felony offense and the impediments resulting from a conviction thereof.
We are aware, however, of State v. Union Tank Car Company, 439 So.2d 377 (La.1983), handed down on March 25, 1983, within days of the decision in State v. Broom, on original hearing, March 18, 1983. In Union Tank Car Company, Jus *968 tice Blanche based on the court’s decision in Broom, concluded there was a constitutional delegation of legislative authority in a misdemeanor conviction under the Louisiana Air Control Law, La.R.S. 30:1081-1088. The Louisiana Supreme Court subsequently reconsidered Broom, and on October 17, 1983, handed down its ruling as to the unconstitutionality of the delegation of legislative authority as to the definition of a felony. Is State v. Union Tank Car Company still good law?
Here, without question this entire statutory scheme does not define the felony offense, but merely sets guidelines for the definition of the offense. Hazardous waste is not defined in the statute except in general terms, leaving to the executive the duty to devise a more definitive definition or description of hazardous waste. Thus, the result is an unconstitutional delegation of constitutional authority to the executive branch. Defendants were convicted under provisions of La.R.S. 30:2183 G(2), thus, the declaration of unconstitutionality is limited to that particular section.
The conclusion we reach that only the legislature can define a felony and that the legislature cannot delegate any authority to another branch of government to fill in the details as to what constitutes a felony is also the conclusion of the article H. Alston Johnson, Legislation — Procedure and Interpretation, 45 La.L.Rev. 341 (1984).
In discussing the delegation of legislative authority and in particular the definition of crimes and their sanctions, the author wrote:

Criteria Not Favoring Delegation Special Legislative Precision for Protection of Individual Human Rights

There are special subject matters where American history and constitutional law have required that the legislature retain almost exclusive power. The definitions of crimes and their sanctions are prime examples. There are numerous cases invalidating legislation giving an administrative agency the power to define a crime, even by reference to regulations of a federal agency such as the Drug Enforcement Administration. There is certainly a feeling that when a citizen’s life or liberty is at stake, it is desirable that any sanctions be clearly expressed, and that they lie within the hands of representatives directly accountable to the public. This was a major factor in the court’s reaction in Broom. (Footnotes omitted).
45 La.L.Rev. at 351-352.
In conclusion Mr. Johnson writes:
CONCLUSION
Delegation of legislative authority has not followed any sophisticated, pre-con-ceived formula with established criteria. Rather, the various branches of government have created a modus vivendi based on the practical necessities of modern society. Nevertheless, essential legislative powers have been reserved and protected from administrative encroachment. Though the task is difficult, some conclusions about the issue of delegation may be drawn.
If the power in question is one that directly affects the liberties of individual citizens, it is likely that there will be, and should be, little or no delegation of authority to regulatory agencies. If the power is an important legislative one, but one traditionally left to regulations, greater delegation may be made with the protection of standards adequate to guide the administrator, and safeguards sufficient to protect the rights of individual citizens. If the power is one over matters requiring considerable expertise, a broader delegation may be justified. In any event, a legislating body should carefully consider the possibility of some form of legislative review, even after the delegation has been made.
Though there is no extended discussion in the opinion, it is apparent that the doom of the Broom delegation lay in a combination of factors: (a) a specific constitutional prohibition which, by analogy, suggested that only the legislature could define a felony; (b) the criminal context in which the issue arose, putting at risk the liberty of an individual citizen; and *969 (c) the lack of any adequate legislative review, leaving the matter in the hands of a committee or sub-committee and a member of the executive branch. Future cases may not be quite so clear; perhaps this discussion will provide food for thought about how best to proceed in future cases.
Therefore, for the above and foregoing reasons, the judgment of the trial court refusing to quash the indictment on the grounds La.R.S. 30:2183 G(2) is unconstitutional is reversed. La.R.S. 30:2183 G(2) is hereby declared unconstitutional, and the motion to quash is granted. As a result thereof, the convictions and sentences are reversed.
CONVICTIONS AND SENTENCES REVERSED.
FOIL, J., dissents and assigns reasons.

. Subsection 2, defining hazardous waste was amended by Acts 1990, No. 1012, Section 1, effective September 7, 1990.