439 So.2d 357 (1983)
STATE of Louisiana
v.
Leroy BROOM.
No. 82-KA-1717.
Supreme Court of Louisiana.
March 18, 1983.
On Rehearing October 17, 1983.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Robert Levy, R. Greg Fowler, Asst. Dist. Attys., for plaintiff-appellant.
J. Michael Small, Kathrine S. Williamson, Alexandria, for defendant-appellee.
CALOGERO, Justice.
Leroy Broom was charged by bill of information with an offense under R.S. 40:1471.18 for having violated the regulations of the Louisiana Explosives Code *358 (LAC 17-11:1 to 11:23).[1] He filed a motion to quash the bill of information. After a hearing the trial judge granted the motion upon finding that the regulation was unconstitutionally vague. The case is before us on appeal, the state challenging the lower court ruling.[2]
The facts surrounding the case, although not especially pertinent to our resolution of the legal issues before us, seem to be as follows:[3] On February 9, 1982, two Louisiana State Police Officers observed defendant park a pickup truck and portable explosives magazine trailer in the parking lot of a cafeteria alongside a larger truck of the same company. The defendant's vehicle displayed four placards reading "Explosives A". The officers observed the defendant exit the truck and reverse two of the four placards to read "Drive Safely", and then enter the restaurant with the driver of the larger truck. Defendant admits that the truck did contain explosives but states that he only went into the restaurant to purchase a fast food order to go. The state alleges that the truck contained 486 pounds of dynamite and 15 blasting caps. The officers arrested defendant and charged him with violating a regulation contained in the explosives code, an act made criminal by La.R.S. 40:1471.18.
La.R.S. 40:1471.1-1471.22 consist of a group of statutory provisions dealing with the regulation of explosives in this state. Among the statutory provisions (La.R.S. 40:1471.9) is one which requires the Secretary of Public Safety to "make, promulgate and enforce regulations setting forth minimum general standards covering manufacture, transportation (including loading and unloading), use, sale, handling and storage of explosives."[4]
La.R.S. 40:1471.18 provides a penalty for violating regulations adopted by the Secretary of Public Safety. La.R.S. 40:1471.18 (Penalties) provides in pertinent part:
... Any person who shall in an application for a license or permit as herein provided, knowingly make a false statement, or who shall obtain explosives under a false statement, pretense or identification, or who shall knowingly otherwise violate any provisions of this Chapter, or regulation promulgated pursuant to this Chapter, shall, upon conviction, be guilty of a felony and liable to a fine of not less than two hundred fifty dollars nor more than one thousand dollars or imprisonment in the state prison not less than one year nor more than five years, or both... (emphasis provided).
In accordance with La.R.S. 40:1471.9, the Secretary of Public Safety adopted a series of regulations (part of a Louisiana Explosives Code). Among them is LAC 17-11:14.6, which defendant is charged with having violated. That regulation provides:

*359 The operator of a conveyance transporting explosives shall not leave such vehicle unattended except while actually making deliveries.
The knowing violation of LAC 17-11:14.6 (as well as any other of the explosives regulations) is made a felony by La.R.S. 40:1471.18 and subjects the violator to a fine or "imprisonment in the state prison," at the discretion of the judge.
Defendant filed a motion to quash the bill of information arguing both that the bill of information "fails to charge an offense which is punishable under a valid statute or regulation" and "that the statute and regulation under which he is being prosecuted are unconstitutionally vague."
The trial judge ruled in favor of defendant on the vagueness issue and, hence, did not pass judgment on the alternative argument that defendant was not charged under a valid statute or regulation. He concluded that the phrase "while actually making deliveries" was susceptible of two different meanings: (1) while actually making deliveries could relate to the entire period of time from the moment you leave the warehouse with the explosives until you arrive at the prescribed destination; or (2) while actually making deliveries could relate to only the time period when the driver is at the prescribed destination and the explosives are being unloaded. Thus the operator of a conveyance might reasonably believe, from the language of the regulation, that he is at liberty to leave the vehicle unattended not only at the unloading destination but as well during any part of the journey from his departure to the conclusion of his delivery.
The state argues that the phrase "while actually making deliveries" can only reasonably be interpreted as describing that point in time when a driver is at his destination whereat delivery is being made. The trial judge found that the phrase was susceptible of both interpretations and held that the provision was thus unconstitutionally vague.
A criminal statute is unconstitutionally vague if its meaning is not clear to the average citizen. State v. Stilley, 416 So.2d 928 (La.1982); State v. Jackson, 404 So.2d 952 (La.1981). An ordinary person of reasonable intelligence must be capable of discerning the meaning of the statute and conforming his conduct to it. State v. Stilley, supra; State v. Baron, 416 So.2d 537 (La.1982). As noted by the trial judge, in State v. Dousay, 378 So.2d 414 (La.1979), this Court set forth two guidelines that must be considered in determining whether a statute is unconstitutionally vague. It was stated therein:
The first of these is that individuals must be given adequate notice that certain contemplated conduct is proscribed and punishable by law. The second is that adequate standards must be provided for those charged with determining the guilt or innocence of an accused.
In the criminal code itself the following rule of interpretation is provided in La.R.S. 14:3:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.
The regulation at issue, LAC 17-11:14.6, inferentially permits the operator of a motor vehicle transporting explosives to leave his vehicle unattended "while actually making deliveries," and by its express terms prohibits leaving the vehicle unattended otherwise. Thus, the question for our determination is whether this provision is clear to the average citizen, or, stated another way, whether an ordinary person of reasonable intelligence is capable of discerning its meaning. In arriving at this determination, the words of the regulation are to be "taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." Applying this standard, we conclude that the provision is not unconstitutionally vague.
*360 Within this specific regulation itself (LAC 17-11:14.6), both the words "deliveries" and "transporting" are used, indicating some intended distinction in their meaning. Reading the two words together and in context indicates that deliver, as used in the regulation, does not refer to the over-the-road transportation, but rather refers to the physical handing over of the explosives. This distinction is similarly made throughout the Explosives Code. For example, LAC 17-11:14.3 requires conveyances transporting explosives to come to a full stop at any railroad crossing or main highway; LAC 17-11:14.4 states that vehicles transporting explosives shall not be driven in excess of 50 miles per hour; LAC 17-11:14.9 admonishes that conveyances transporting explosives must avoid congested areas and heavy traffic; LAC 17-11:14.10 provides that the delivery of explosives shall only be to authorized persons and "into authorized magazines or approved temporary storage or handling areas;" LAC 17-11:15.6 provides for the utilization of specific procedures "when explosives are brought into the locality under the jurisdiction of these Rules and Regulations, by means of transportation for delivery to an intermediate receiver."
Thus, consistently throughout the regulations the word transport (or derivatives of it) is used to refer to that period of time when the vehicle is traveling from one point to another with the explosives. And the word deliver (and its derivatives) is used to refer to the period of time when the explosives are actually being handed over. There is no reason for us to conclude that those words, when used in the regulation under consideration, were intended to mean otherwise. Nor would the ordinary person of reasonable intelligence find difficulty in understanding the regulation as we understand and have here interpreted its meaning.
Furthermore, this Court was once before called upon to consider whether the word deliver was vague [State v. White, 254 La. 389, 223 So.2d 843 (1969)] and at that time concluded:
The words "deliver," "delivery," and "delivering" are ordinary words and are used constantly in everyday conversation. They indicate a transfer or handing over.
For these reasons, we conclude that LAC 17-11:14.6 gives an individual adequate notice of the proscribed conduct and it provides adequate standards for those charged with determining the guilt or innocence of an accused. Accordingly, we find that the regulation is not unconstitutionally vague.
Defendant's second contention is that LAC 17-11:14.6 is not a valid "statute or regulation" because La.R.S. 40:1471.1-1471.22 unconstitutionally delegate authority to the Secretary of Public Safety to "make, promulgate and enforce" the regulations.[5]
Defendant argues, principally, that the delegation of legislative authority to the Secretary of Public Safety authorized by the above provisions is unconstitutional because it was not accompanied by "a sufficient basic standard and rule of action for guidance of the instrumentality or officer that is to administer the law." City of Alexandria v. Alexandria Firefighters Association, 220 La. 754, 57 So.2d 673 (La.1952).
The state, on the other hand, argues, that the delegation of authority to the administrative agency to "make, promulgate and enforce regulations" was made with sufficient guidelines and safeguards to support its constitutionality.
*361 Louisiana's Constitution, like the United States Constitution, provides for a separation of powers among the three branches of government, legislative, executive and judicial. La. Const. art. II, § 1; U.S. Const. arts. I, II, and III. It provides that "no one of these branches, ... shall exercise power belonging to either of the others." La. Const. art. II, § 2. The legislative power of the state is vested in a legislature, consisting of a Senate and a House of Representatives. La. Const. art. III, § 1. It is from these provisions that we derive the general principle "that legislative power, conferred under constitutional provisions, cannot be delegated by the Legislature either to the people or to any other body or authority." City of Alexandria, supra.
If applied literally, the Constitution would absolutely preclude any delegation of legislative power to a non-legislative body. Such literal application of the nondelegation principles would unduly hamper the Legislature in the exercise of its constitutionally vested powers. Accordingly, the courts have repeatedly recognized that there are exceptions to the nondelegation doctrine. United States v. Shreveport Grain Elevator Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932); United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911); State v. Rodriguez, 379 So.2d 1084 (La.1980); Schwegmann Brothers Giant Super Markets v. McCrory, Commissioner of Agriculture, 237 La. 768, 112 So.2d 606 (1959); State v. Guidry, 142 La. 422, 76 So. 843 (1917); State v. Syas, 136 La. 628, 67 So. 522 (1915). Thus, it has been provided that so long as the legislature establishes by statute standards for the guidance of the executive or administrative body or officer such that the body or officer is not vested with arbitrary discretion there is no unconstitutional delegation of legislative authority to the executive branch of the government. State v. Rodriguez, supra.
The task of determining whether a particular delegation is accompanied by sufficient guiding standards is not a simple one. This was recognized by United States Chief Justice John Marshall in 1825:
The line has not been exactly drawn which separates those important subjects, which must be entirely regulated by the legislature itself, from those of less interest, in which a general provision may be made, and power given to those who are to act under such general provision, to fill up the details.

Wayman v. Southard, 23 U.S. (10 Wheat) 1, 43, 6 L.Ed. 253.
The problem has grown even more pervasive in these modern times where our legislature is confronted with such complex problems involving numerous details with which the legislature is often not equipped to deal.[6] We are faced with a balancing of the legislative need to delegate authority against the constitutional mandate that the legislature retain in its own hands the supreme legislative power. It has been noted that:
[t]he key to an intelligent application of this [balancing] is an understanding that, while delegations of power to administrative agencies are necessary, such transfers of power should be closely monitored to insure that the decision-making by the agency is not arbitrary and unreasoned....
Glenn, the Coastal Management Act in the Courts: A Preliminary Analysis, 53 N.C.L.Rev. 303, 315 (1974).
Thus, our "guiding standards" test has been used as a means of determining where the line of legislative delegation should be drawn. In search for whether a certain delegation of legislative authority vests arbitrary discretion in an administrative body, we have heretofore looked primarily to declarations in the delegating statutes of the goals, policies and standards which a given agency is to apply in the exercise of its delegated powers. However, with the growing complexity of the issues with which our legislature must deal, the adequate guiding standards test, if strictly applied, would limit the legislature's ability to *362 act effectively.[7] Statutory declarations of standards can only be as specific as the circumstances permit. When there is an obvious need for expertise in the achievement of legislative goals, the legislature itself simply cannot be required to lay down a detailed agenda covering every conceivable problem which might arise in the implementation of the legislation. Insofar as legislative standards are concerned it should be enough that general policies and standards have been articulated which are sufficient to provide direction to an administrative body possessing the expertise to adapt the legislative goals to varying circumstances.
The key purpose of the courts' application of the adequate guiding standards test to legislative delegations of authority is to prevent the decision making by the agencies from being arbitrary or unreasoned. That purpose can better be served, by looking to the procedural safeguards which accompany the delegated authority along with the guiding standards. Thus, to insure that the regulatory body is not given unbridled discretion there is a need to examine more acutely the procedural safeguards mandated by the Legislature and/or adopted by the administrative agency, while de-emphasizing the imperative need for comprehensive statutory standards. The combination of less emphasis on guiding standards and more emphasis on procedural safeguards more effectively focuses judicial scrutiny on the material issue, whether the administrative agency is sufficiently guided to prevent arbitrary or unreasoned decisions by it, while keeping in mind the needs of the Legislature in dealing with the complex issues which arise. This combined approach of considering both standards and safeguards has been strongly urged by Professor Kenneth Culp Davis in his Administrative Law Treatise wherein he states:
What is needed is not simply a substitution of a requirement of safeguards for a requirement of standards but a consideration of both safeguards and standards in order to determine whether the total protection against arbitrary power is adequate.[8] *363 (§ 2.06, at p. 41).
Applying these principles to this case and focusing on the dual protection against arbitrariness (standards and safeguards), we conclude that La.R.S. 40:1471.1-1471.22 properly delegate authority to the Secretary of Public Safety to "make, promulgate and enforce regulations" covering explosives.
The Legislation, as a whole, pronounces the Legislative policy determination favoring the protection of the public as well as those handling and using explosives from any danger derived from the handling, manufacture or transportation of explosives. More specifically, La.R.S. 40:1471.9 directs that the regulations set forth "minimum general standards covering manufacture, transportation (including loading and unloading), use, sale, handling and storage of explosives ... as are reasonably necessary for the protection of the health, welfare and safety of the public and persons possessing, handling and using such material and shall be in substantial conformity with generally accepted standards of safety concerning such subject matters." It further expressly provides "that regulations in substantial conformity with the published rules and standards of the Institute of Makers of Explosives in relation to said subject matters shall be deemed to be in substantial conformity with accepted standards of safety."
Other guiding standards are found throughout the 22 statutes. Therein, the term "explosives" is precisely defined, including blasting agents and detonators. Licensing requirements are provided, as well as notification requirements and disposal regulations.
With regard to procedural safeguards, La.R.S. 40:1471.9 directs that the "regulations shall be adopted by the Secretary of Public Safety only after a public hearing thereon pursuant to Notice previously given to persons he shall deem interested therein." La.R.S. 40:1471.10 further provides that "[a]ll procedures with regard to the promulgation of rules and regulations pursuant to this Part, and the revocation, suspension or denial of licenses and permits, shall be in accordance with the Louisiana administrative procedures act."
The Administrative Procedures Act, La. R.S. 49:951-970, consists of 21 statutes regulating the procedures administrative agencies must follow in adopting, amending or repealing any regulations. Included therein are detailed provisions for notification of any intended action (La.R.S. 49:953); filing requirements and effective dates (La.R.S. 49:954); publication and distribution requirements (La.R.S. 49:954.1); adjudication requirements, including rules for hearings and the compilation of records (La.R.S. 49:955); licensing requirements (La.R.S. 49:961); and provisions for judicial review of agency determinations (La.R.S. 49:962-965).
Even more pertinent to our determinations in this case, La.R.S. 49:968 was enacted with the declared purpose "to provide a procedure whereby the legislature may review the exercise of rule-making authority, an extension of the legislative lawmaking function, which it has delegated to state agencies." The statute provides that prior to the adoption, amendment or repeal of any regulations the agency must submit a report relative to the proposed rule change to the appropriate standing committees of the legislature. The Department of Public Safety is to report to the House Committee on the Judiciary and the Senate Committee on the Judiciary. La.R.S. 49:968(B)(13). The standing committees then conduct hearings on all proposed rule changes through oversight committees (a majority of the standing committee) with a special *364 view toward determining whether the proposed rule is in conformity with the intent of the enabling legislation, and considering the advisability of the rule change. La.R.S. 49:968(D). In addition to these review procedures, La.R.S. 49:969 gives the legislature the authority to nullify any rule or regulation by concurrent resolution. The governor, likewise, has veto power over the rules or regulations. La.R.S. 49:970.
The procedural safeguards incorporated in La.R.S. 40:1471.1-1471.22, coupled with the dictates of the Administrative Procedures Act, which by reference is incorporated in the explosives statutes, provide ample protection against arbitrary action by the Department of Public Safety in adopting the regulations.
Therefore, considering the expressed policy and standards along with the enacted procedural safeguards, we conclude that the general contention by defendant, that the regulation, LAC 17-11:14.6, is invalid because the product of an unconstitutional delegation of legislative authority, has no merit.
We so conclude, notwithstanding, that La.R.S. 40:1471.18 imposes a penal, not a civil, sanction for violating any of the regulations. Because an administrative agency has aided the legislature in defining a crime for which the legislature in advance has established the penalty, it may well be that we should give more exacting scrutiny to complaints of excessiveness of sentence, or attacks upon the adequacy of the legislature's guiding standards and safeguards accompanying the delegation. The fact that a crime is thus defined, however, does not infect with unconstitutionality an otherwise valid delegation of legislative authority.[9] To the contrary, it has long been recognized by this Court as well as by the United States Supreme Court that administrative agencies may be delegated power to issue regulations for violation of which a statute imposes penal sanctions. United States v. Grimaud, supra; State v. Syas, supra.
In State v. Syas, the defendant was being prosecuted for violating a regulation, enacted by an administrative agency, for which a statute imposed penal sanctions. Therein, the defendant argued that the delegation to the administrative agency of the authority to enact regulations, the violation of which could result in imprisonment, was for that reason unconstitutional. The Court noted that it was the statute which provided the penalty for violation of the regulation, and held that defendant's argument had no merit. The Court relied on the United States Supreme Court case United States v. Grimaud, supra, in support of its holding. In Grimaud, the Court held:
The authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punished as a public offense. A violation of ... [the rules] is made a crime, not by the Secretary, but by Congress. The statute, not the Secretary, fixes the penalty.
And, as has been noted, "the Supreme Court's view has not wavered a millemeter during the six decades since Grimaud's case came before it." Professor Walter Gellhorn, Administrative Prescription and Imposition of Penalties, Vol. 1970, Washington University Law Quarterly, 265.
It has also been stated by other leading authorities that the fact that the violation of the regulation could result in imprisonment *365 should not change the analysis of whether the delegation of authority was proper or not. For example, it was stated:
The argument that the power of creating a crime affects the individual more severely than that of creating civil or administrative liability is of psychological rather than legal nature. If the legislature may delegate power to administrative agencies to fill out the details of a legislative act, the nature of the sanctions should not bar them from doing so.
42 Mich.L.Rev. 51.
Therefore, on the showing made in this record, we find defendant's constitutional attack to be without merit, and hold that the trial court erred in quashing the information against the defendant.

Decree
For the foregoing reasons, we reverse the trial court ruling quashing the indictment against the defendant, and order the case remanded for further proceedings consistent with the views expressed herein.
REVERSED; REMANDED.
DIXON, C.J., dissents with reasons.
WATSON, J., dissents believing that Schwegmann standards have not been met.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
A statute which delegates to the director of public safety the duty of making and enforcing regulations "setting forth minimum general standards covering manufacture, [and] transportion" of explosives, and making the violation of such regulations a felony punishable by a fine of up to $1000 or imprisonment for not less than one year nor more than five years "in the state prison" is an unconstitutional delegation of legislative authority. There is, in this case, no necessity for delegating the legislative power, and the Constitution prohibits it.
Article II, La. Const. of 1974 provides:
"Section 1. The powers of government of the state are divided into three separate branches: legislative, executive, and judicial.
Section 2. Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others."
Serious crimes ought to be defined by the legislature.
The statute itself does not set forth adequate standards for the regulations.[1] First, the director is instructed to make regulations "setting forth minimum general standards." R.S. 40:1471.9 further declares that regulations of the Institute of Makers of Explosives shall be the standards followed by the regulations.
There is no indication that the explosive industry is either so rapidly changing, or esoteric, that the legislature could not, more easily than the director of public safety, make the laws, the penalty for the violation of which is a fine or imprisonment at hard labor for not less than one year.

ON REHEARING
WATSON, Justice.[*]
Defendant, Leroy Broom, was charged with a felony, "violation of the Louisiana *366 Explosives Code, LSA-R.S. 40:1471.18", more specifically "regulation LAC 17-11:14.6 promulgated under the authority of LSA-R.S. 40:1471.9, in that he did operate a conveyance transporting explosives and did leave such vehicle unattended at a time other than when actually making deliveries". The trial court quashed the bill of information, and the state has appealed.[1]

ISSUE
The issue is whether LSA-R.S. 40:1471.9 and 40:1471.18 violate the separation of powers mandated in LSA-Const. Art. 2, § 2, by delegating to the director of public safety the authority to define various felonies.[2]

LAW
Louisiana's regulation of explosives is found in LSA-R.S. 40:1471.1 through 40:1471.22.[3] The statutes provide that the director of public safety is to set minimum standards for the manufacture, transportation, use, sale, handling and storage of explosives. The regulations are to be those "reasonably necessary" to protect the public's "health, welfare and safety," and are to conform with "the rules and standards of the Institute of Makers of Explosives." LSA-R.S. 40:1471.9.
Possession of explosives contrary to the regulations is punishable by a fine of five thousand to ten thousand dollars or imprisonment in the state prison for five to ten years or both. LSA-R.S. 40:1471.18. Violation of any of the regulations carries a fine of two hundred and fifty to one thousand dollars, or imprisonment in the state prison for one year to five years, or both. LSA-R.S. 40:1471.18. The greater offense requires "the intent to harm life, limb or property" and the lesser offense must be "knowingly" committed. Possession contrary to the regulations is "prima facie evidence of an intent to use the same for destruction of life, limb or property". LSA-R.S. 40:1471.18.[4]
The legislative or law making power of Louisiana is vested in the legislature. LSA-Const.1974, Art. 3, § 1(A):
"The legislative power of the state is vested in a legislature, consisting of a Senate and a House of Representatives...."
LSA-Const.1974, Art. 2, §§ 1 and 2 provide:
"§ 1. The powers of government of the state are divided into three separate branches: legislative, executive and judicial.
"§ 2. Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others."
The first Louisiana Constitution, the Constitution of 1812, had similar provisions.[5] The constitutions of Louisiana, from 1812 to the present, specifically confine the powers of each of the three departments of *367 government.[6]Saint v. Allen, 169 La. 1046, 126 So. 548 (1930).[7] The United States Constitution does not expressly require that the powers of the three branches be kept separate.
LSA-Const.1974, Art. VI, § 9(A)(1) states:
"(A) Limitations. No local governmental subdivision shall (1) define and provide for the punishment of a felony; ..."
Thus, the legislature must define felonies.
Louisiana courts have consistently followed their constitutional mandate, holding that only the legislature can perform the legislative function of defining serious criminal offenses. State v. Truby, 211 La. 178, 29 So.2d 758 (1947); State v. Williams, 173 La. 1, 136 So. 68 (1931); State v. Smith, 194 La. 1015, 195 So. 523 (1940); State v. Whitlock, 193 La. 1044, 192 So. 697 (1939); State v. Maitrejean, 193 La. 824, 192 So. 361 (1939); State v. Billot, 154 La. 402, 97 So. 589 (1923). Williams, supra, stated: "in Louisiana, all crimes are statutory, and the determination of what acts constitute crimes are purely legislative functions which cannot be delegated...."[8]
The Department of Public Safety is, of course, part of the executive branch of government. LSA-Const. Art. IV, § 1(B). "[W]here a statute vests arbitrary discretion in a board or an official without prescribing standards of guidance there is an unconstitutional delegation of legislative authority to the executive branch of the government." State v. Rodriguez, 379 So.2d 1084 at 1086 (La., 1980).[9]Rodriguez followed the rule established in Schwegmann Brothers Giant Supermarkets v. McCroy, Commissioner of Agriculture, 237 La. 768, 112 So.2d 606 (1959):
"So long as the regulation or action of the official or board authorized by statute does not in effect determine what the law shall be, or involve the exercise of primary and independent discretion, but only determines within prescribed limits some fact upon which the law by its own terms operates, such regulation is administrative and not legislative in its nature...." 237 La. at 788, 112 So.2d at 613.
Theoretically, Congress is also bound by the requirement of a prescribed standard; agencies and officials merely "fill up the details". United States v. Grimaud, 220 U.S. 506 at 517, 31 S.Ct. 480 at 483, 55 L.Ed. 563 at 568 (1911), quoting Chief Justice Marshall in Wayman v. Southard.[10] Because many federal executive agencies operate under token standards, it has been suggested that safeguards against arbitrary action are more important than standards.[11] One safeguard is congressional veto of administrative *368 action. However, this sanction can only be exercised on a bicameral basis. United States v. Chadha, ___ U.S. ___, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).
According to LSA-R.S. 40:1471.10, the safeguards established here are those of the Administrative Procedure Act. LSA-R.S. 49:950-970.[12] Review of the rules adopted by the Department of Public Safety under its delegated "lawmaking function" is by House and Senate Committees on the Judiciary. LSA-R.S. 49:968.A and B(13). After hearings by oversight subcommittees of those committees, any proposed rule change deemed unacceptable is reported to the Governor. Unless the Governor disapproves of the report within five days, the rule change is rejected. A proposed rule change found acceptable by the subcommittees or the Governor may be adopted by the administrative agency. LSA-R.S. 49:968.[13] By concurrent resolution, the legislature may override the committees or subcommittees and also may nullify or suspend any administrative rule or regulation. LSA-R.S. 49:968-969. The Governor also has suspension and veto power, as well as affirmative authority. LSA-R.S. 49:968; 49:970.
The detailed regulations of the Louisiana Explosives Code are couched in very general terms: i.e., warehouses are to be supervised by "a competent person";[14] foundations for permanent magazines shall be of "substantial construction";[15] conveyances used "shall be strong enough to carry the load without difficulty".[16]
Broom was charged with violation of LAC 17-11:14.6:
"The operator of a conveyance transporting explosives shall not leave such vehicles unattended except while actually making deliveries."

FACTS
Although no facts are in the record, it is alleged that Broom's vehicle had four placards reading "Explosives A", that he reversed two of the four to the reverse side reading "Drive Safely", and entered a restaurant where he intended to purchase an order of fast food.

CONCLUSION
LSA-R.S. 40:1471.18, entitled "Penalties", provides them for several offenses, including: (1) possession of explosives contrary to the regulations; and (2) violation of the regulations.[17] There is a wide disparity in the maximum penalties for the two offenses.[18] While it is not entirely clear which one is Broom's crime, it has been assumed that his exposure is to the lesser penalty.[19] However, Broom may be faced with a maximum sentence exceeding five years, a factor which would affect his *369 right to bail if he were convicted. Art. 1, § 18.[20]
Despite lip service to separation of powers' principles,[21] the federal government has, for pragmatic reasons, rejected the concept that delegation of legislative powers requires meaningful standards.[22] Louisiana, however, cannot constitutionally cast overboard "[t]he dead weight of alleged separation-of-powers limitations...."[23]
Under the Louisiana Constitution of 1974, the legislature cannot delegate the right to define felony offenses to administrative bodies or department heads. The wisdom of the constitutional concept is exemplified by the vagueness of the regulations in the Louisiana Explosives Code and the lack of full legislative review for those enactments. The legislature has not only delegated to the director of public safety the authority to create felonies, it has relinquished most of the supervision over that authority to its subcommittees and the governor. Even if the delegation were constitutional, the lack of legislative direction would make the enactment procedures suspect. Lawmaking is not an executive function. United States v. Chadha, supra, footnote 16.
LSA-R.S. 40:1471.9 unconstitutionally delegates authority to the director of public safety to define the felony offenses punishable under LSA-R.S. 40:1471.18. The legislative power to create and define offenses cannot be delegated. State v. Rodriguez, supra. LSA-R.S. 40:1471.18 provides grave penalties for undefined felonies and is itself vague and ambiguous. "With all the obvious flaws of delay, untidiness, and potential for abuse, we have not yet found a better way to preserve freedom than by making the exercise of power subject to the carefully crafted restraints spelled out in the Constitution." United States v. Chadha, ___ U.S. at ___, 103 S.Ct. at 2788, 77 L.Ed.2d at 350.
Both statutes, LSA-R.S. 40:1471.9 and 40:1471.18, are unconstitutional because they violate the separation of powers mandated in LSA-Const. Art. II, § 2. The trial court was correct in quashing the bill of information against defendant, Leroy Broom.

DECREE
For the foregoing reasons, our original decree is vacated. The judgment of the trial court is affirmed.
ORIGINAL DECREE VACATED; JUDGMENT OF THE TRIAL COURT REINSTATED AND AFFIRMED.
LEMMON, J., concurs.
DENNIS, J., concurs and joins in the opinion insofar as it holds the statutes to be an unconstitutional and unnecessary delegation of the power to define felonies.
CALOGERO and BLANCHE, JJ., dissent and assign reasons.

APPENDIX
LSA-R.S. 40:1471.1 provides:
"The provisions of this Part are cumulative and shall not be construed as repealing or affecting any powers, duties or authorities of the director of public safety under any other law of this state; provided that with respect to the regulations of explosives as herein provided, in instances where the *370 provisions of this Part may conflict with any other such law, the provisions of this Part shall control."
LSA-R.S. 40:1471.2 provides:
"The following words used in this part shall have the meanings respectively ascribed to them in this section, as follows:
"(1) `Explosives' means any chemical compound mixture, or device, the primary or common purpose of which is to function by explosion; the term includes, but is not limited to, dynamite and other high explosives, black powder in quantities in excess of five pounds, pellet powder, initiating explosives, detonators, safety fuzes, squibs, detonating cord, igniter cord, and igniters. The term `explosives' shall further include, but not be limited to, the following:
"(a) `blasting agent' which shall mean any material or mixture, consisting of fuel and oxidizer, intended for blasting, not otherwise defined as an explosive; provided, that the finished product, as mixed for use or shipment, cannot be detonated by means of a numbered 8 test blasting cap when unconfined.
"(b) `detonator' which shall mean any device containing a detonating charge that is used for initiating detonation in an explosive; the term includes, but is not limited to, electric blasting caps of instantaneous and delay types, blasting caps for use with safety fuzes and detonating-cord delay connectors.
"(2) `Person.' Any natural person, partnership, association or corporation.
"(3) `Manufacturer-distributor.' A person engaged in the manufacture, compounding, combining, production or distribution of explosives.
"(4) `Dealer.' A person engaged in the wholesale or retail business of buying and selling explosives; provided, that should a manufacturer-distributor make sales to users, such manufacturer shall not be required to obtain an additional license as a dealer.
"(5) `User.' The person who, as an ultimate consumer of an explosive, purchases same from a dealer or manufacturer-distributor or a dealer or manufacturer-distributor who uses an explosive as an ultimate consumer.
"(6) `Blaster.' A person employed by a user who detonates or otherwise effects the explosion of an explosive or who is in immediate personal charge and supervision of one or more other persons engaged in such activity.
"(7) `Sale.' This word and its various forms as used shall include delivery of an explosive with or without consideration.
"(8) `Purchase.' This word and its various forms as used shall include acquisition of any explosive by a person with or without consideration.
"(9) `Highway.' Shall mean any public highway in this state, including public streets, alleys and other thoroughfares, by whatever name, in incorporated cities and towns."
LSA-R.S. 40:1471.3 provides:
"A. It shall be unlawful for any person to engage in the business of a manufacturer-distributor of or a dealer in explosives, or to transport explosives, or to acquire, sell, possess, store or engage in the use of explosives in this state, except in conformity with the provisions of this Part. Each manufacturer-distributor, dealer, user, or blaster, as such words are above defined, shall possess a valid and subsisting license or permit issued by the secretary of the Department of Public Safety.
"B. Each manufacturer-distributor, dealer and user maintaining a storage magazine shall possess an additional license or permit, as herein set forth, for each magazine. Locations of such magazines shall be exactly reported to the Department of Public Safety in the application for such license or permit. Any change in such magazine locations shall be reported to the Department of Public Safety, explosives control section, in advance of the actual change. Written notice of such location change shall be filed with the department of public safety, explosives control section not later than seven working days after such change is effected.
*371 "C. Licenses and permits shall be required for the following and the fees therefor are as follows:

"(1) Manufacturer-distributor $50.00
"(2) Dealer $50.00
"(3) User $15.00
"(4) Magazine $10.00
"(5) Blaster $10.00

"D. Said licenses and permits shall be issued by the secretary of the Department of Public Safety for one calendar year beginning with the date of issue.
"E. The forms of such licenses, permits, and applications therefor shall be prescribed by the secretary of the Department of Public Safety and shall require such information and data as the secretary deems appropriate. No license or permit shall be issued to a convicted felon.
"F. No license or permit is required for persons detonating or otherwise effecting the detonation of explosives working under the immediate and personal supervision and control of a person holding a valid blaster's permit.
"G. No license or permit shall be issued by the secretary of the Department of Public Safety pursuant to an application therefor unless it shall be determined that the purpose for which the applicant seeks a permit or license falls within the purview of this Part and that such purpose is not violative of any other laws of this state.
"H. The fees collected for such licenses and permits are hereby appropriated for the use of the secretary of the Department of Public Safety in the administration of this Part, and shall be deposited in a special fund to be established in the office of the state treasurer."
LSA-R.S. 40:1471.4 provides:
"A. No person shall possess an explosive unless he is the holder of a valid license or permit required by the provisions of this Part, and possesses such explosive for the purpose set forth by the license or permit.
"B. There are hereby made the following exceptions:
"(1) Contract and private carriers operating in interstate commerce, however, such carriers transporting explosives for ultimate delivery in the state of Louisiana shall be required to acquire such license or permit as appropriate.
"(2) Persons possessing explosives while under the immediate and personal supervision and control of a person holding a valid blaster's permit and then engaged in the preparation for and in the detonating or otherwise effecting the detonation of an explosive; however, that it shall be unlawful for any person holding a blaster's permit to allow persons working under him to possess an explosive except during the time when such person is loading or unloading or detonating or otherwise effecting the detonation of an explosive under the immediate and personal supervision and control of said blaster.
"The term `explosive' shall not include smokeless powder when used in sporting arms."
LSA-R.S. 40:1471.5 provides:
"A. Each stick of dynamite and each unit of explosives manufactured in this state or transported into this state for distribution or sale in this state shall have affixed thereto a label approved by the secretary of the Department of Public Safety stating the type and class of explosives as well as a serial or control number assigned by the manufacturer or the secretary of the Department of Public Safety. All packaging of explosives shall be required to be approved by the secretary of the Department of Public Safety.
"B. Manufacturer-distributors and dealers shall keep accurate accounts of all inventories and sales of explosives. A manufacturer-distributor is authorized to sell explosives to dealers and users. All such sales shall be evidenced by invoices or sales tickets executed in quadruplicate, the manufacturer-distributor *372 or dealer retaining the original and one copy, and delivering a third copy thereof to the purchaser, and forwarding a fourth copy thereof to the Department of Public Safety, explosives control section, Baton Rouge, Louisiana.
"C. Such invoices or sales tickets so delivered to purchasers shall bear the name of the manufacturer or dealer and purchaser, date of sale, quantity sold, use for which the explosive is purchased, and the address of the purchaser.
"D. Upon the sale or delivery of any explosive within the state of Louisiana the selling and receiving agency or either of them shall notify the Department of Public Safety, explosives control section of such sale or delivery by forwarding thereto a copy of the bill of sale or bill of lading.
"E. Manufacturer-distributors, and dealers shall retain all records of inventories, invoices, sales tickets, and copies thereof and shall make the same available to any peace officer of this state, and the secretary of the Department of Public Safety or his duly authorized representative at such intervals as the secretary shall deem appropriate.
"F. Each user, as defined herein, shall keep an accurate written inventory of all explosives possessed by him and a record of the use of such explosives on forms approved by the secretary of the Department of Public Safety. Such inventory and record of use shall be made available to any peace officer of this state, or the secretary of the Department of Public Safety or his duly authorized representative at such intervals as the secretary shall deem appropriate.
"G. All records required to be maintained under Subsections E and F of this Section, shall require approval by the Department of Public Safety before they may be disposed of, and shall be turned over to the Department of Public Safety upon a business, which is required to keep such records, terminating its operations."
LSA-R.S. 40:1471.6 provides:
"A. No manufacturer-distributor or dealer shall sell any explosive unless the purchaser thereof is duly licensed under the provisions of this Part and authorized to purchase same and that said explosives are to be used by the purchaser for a purpose covered by the purchaser's license."
LSA-R.S. 40:1471.7 provides:
"Any sheriff, police department or peace officer of this state shall give immediate notice to the secretary of the Department of Public Safety of any theft, illegal use or illegal possession of explosives within the purview of this Part, coming to his attention, and shall forward a copy of his final written report to the secretary of the Department of Public Safety in Louisiana. Any manufacturer-distributor, dealer, user or blaster who knows that explosives in his possession have been stolen or otherwise misappropriated shall immediately notify the nearest sheriff's office or police department and the secretary of the Department of Public Safety of such fact. In addition, each manufacturer-distributor, dealer and user shall physically inspect all magazines at least one time every three days to insure security of the explosives."
LSA-R.S. 40:1471.8 provides:
"No person shall transport any explosives into this state or within the boundaries of this state unless such person first acquires a permit to transport explosives issued by the secretary of the Department of Public Safety, except contract and private carriers, including but not limited to highway, air, rail, and water, operating in interstate commerce, however, such carriers transporting explosives for ultimate delivery in the state of Louisiana shall be required to acquire a permit to transport explosives."
LSA-R.S. 40:1471.9 provides:
"The director of public safety shall make, promulgate and enforce regulations setting forth minimum general standards covering manufacture, transportation (including loading and unloading), use, sale, handling and storage of explosives. Said regulations shall be such as are reasonably necessary for the protection of the health, welfare and safety of the public and persons possessing, handling and using such materials, *373 and shall be in substantial conformity with generally accepted standards of safety concerning such subject matters. It is hereby declared that regulations in substantial conformity with the published rules and standards of the Institute of Makers of Explosives in relation to said subject matters shall be deemed to be in substantial conformity with accepted standards of safety concerning such subject matters. Such regulations shall be adopted by the director of public safety only after a public hearing thereon pursuant to notice previously given to persons he shall deem interested therein."
LSA-R.S. 40:1471.10 provides:
"All procedures with regard to the promulgation of rules and regulations pursuant to this Part, and the revocation, suspension, or denial of licenses and permits, shall be in accordance with the Louisiana Administrative Procedures Act."
LSA-R.S. 40:1471.11 and 1471.12 have been repealed.
LSA-R.S. 40:1471.13 provides:
"A. A license or permit may be revoked, suspended, or denied by the secretary of the Department of Public Safety because of, but not limited to, the following:
"(1) Noncompliance with any order issued by the secretary of the Department of Public Safety.
"(2) Licensee or permittee convicted of a felony.
"(3) Licensee or permittee advocates, or knowingly belongs to any organization or group which advocates violent overthrow of or violent action against any federal, state or local government or institution.
"(4) Licensee or permittee suffers from a mental or physical defect which in the judgment of the secretary of the Department of Public Safety may be hazardous to himself or the public.
"(5) Violation by the licensee or permittee of the terms specified on the license or permit, or essential changes in the condition under which the license or permit was issued.
"(6) Violations by the licensee or permittee of any of the provisions of this Part, however, except for violations deemed to constitute an immediate threat to public safety as provided under R.S. 40:1471.17, it shall be the policy of the Department of Public Safety to issue a ninety day letter of noncompliance for such violations. Should a licensee or permittee receive two such letters of noncompliance within a period of twelve months, revocation or suspension procedures can be invoked.
"(7) The giving of any false information or the making of a misrepresentation to obtain a license or permit.
"(8) Any violation of this Part deemed to constitute an immediate threat to public safety, as provided in R.S. 40:1471.17.
"B. The secretary of the Department of Public Safety may invoke suspension of a license or permit pending disposition of a felony charge which involves the use of explosives brought against a licensee or permittee."
LSA-R.S. 40:1471.14, 40:1471.15, and 40:1471.16 have been repealed.
LSA-R.S. 40:1471.17 provides:
"A. Upon the violation of any provision of this Part which is deemed, by the secretary of the Department of Public Safety, to constitute an immediate threat to public safety, the secretary shall have the power to:
"(1) Order the licensee or permittee to immediately correct such violation, or
"(2) Confiscate such explosives and dispose of them in any manner deemed appropriate to insure the general safety of the public.
"B. Such violation shall be cause for revocation or suspension of the violator's license or permit without the issuance of a ninety day noncompliance letter as provided in R.S. 40:1471.13(A)(6).
"C. All costs incurred in the confiscation and disposal of unsafe explosives as provided in Subsection A of this Section, shall be paid from the explosives trust fund."
LSA-R.S. 40:1471.18 provides:
*374 "Any person who manufactures, purchases, keeps, stores, possesses, distributes, or uses any explosive with the intent to harm life, limb or property, shall, upon conviction, be guilty of a felony and liable to a fine of not less than five thousand dollars nor more than ten thousand dollars or imprisonment in the state prison not less than five years nor more than ten years, or both. Any person who shall in an application for a license or permit as herein provided, knowingly make a false statement, or who shall obtain explosives under a false statement, pretense or identification, or who shall knowingly otherwise violate any provisions of this Part, or regulation promulgated pursuant to this Part, shall, upon conviction, be guilty of a felony and liable to a fine of not less than two hundred fifty dollars nor more than one thousand dollars or imprisonment in the state prison not less than one year nor more than five years, or both. Possession of explosives under circumstances contrary to the provisions of this Part or such regulations shall be prima facie evidence of an intent to use the same for destruction of life, limb or property. Conviction under this section of any person holding a license or permit shall effect cancellation thereof."
LSA-R.S. 40:1471.19 provides:
"In addition to the penalties and other enforcement provisions of this Part, in the event any person engaged in any of the businesses covered by this Part or any rule or regulation adopted or promulgated in pursuance thereto, the director of public safety is authorized to resort to proceedings for injunction in the district court of the parish where such person shall reside or have his or its principal place of business, and therein apply for such temporary and permanent orders as the director of public safety may deem necessary to restrain such person from engaging in any such businesses until such person shall have complied with the provisions of this Part and such rules and regulations."
LSA-R.S. 40:1471.20 provides:
"Nothing contained in this Part shall apply to the regular military or naval forces of the United States; or to the duly organized military force of any state or territory thereof; or to police or fire departments in this state, provided they are acting within their respective official capacities and in the performance of their duties."
LSA-R.S. 40:1471.21 provides:
"A. Nothing contained in this Part shall affect any existing ordinances, rules or regulations pertaining to explosives of any incorporated city or town in this state which are not less restrictive than the provisions of this Part and the rules and regulations promulgated pursuant thereto, or affect, modify or limit the power of such incorporated city or town to adopt ordinances, rules and regulations pertaining to explosives within the respective corporate limits.
"B. However, every holder of a license or permit issued by the secretary of the Department of Public Safety shall obtain the specific approval of the explosives control section, Department of Public Safety, Baton Rouge, Louisiana, before detonating any explosives in any congested area of the state, whether within the corporate limits of a city or town or not."
LSA-R.S. 40:1471.22 provides:
"The director of public safety is authorized to employ such persons as he may deem qualified consistent with applicable Civil Service regulations, and incur such other expenses as may be required, in connection with the administration of this Part."
CALOGERO, Justice, dissenting.
I dissent from the majority opinion on rehearing not simply because I adhere to the views expressed on original hearing, but just as importantly, because the majority on rehearing misconstrues several important concepts and upsets settled law concerning the Legislature's ability to delegate legislative authority to administrative agencies.
First, by holding that La.R.S. 40:1471.9 is unconstitutional, the majority is holding that all the explosive regulations are invalid, since La.R.S. 40:1471.9 is the very statute that gives the administrative body the authority to adopt any and all regulations. *375 If the majority opinion in this regard is correct, that the legislature could not delegate, to the Department of Public Safety, the authority to enact explosives regulations, is not the effect to cause the invalidation of all comparable Legislative delegations to administrative bodies?
Second, the majority's analysis of the issue, in relying on constitutional provisions of separation of power to conclude that "only the legislature can perform the legislative function," totally ignores well settled jurisprudence recognizing exceptions to the nondelegation doctrine. United States v. Shreveport Grain Elevator Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932); United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911); State v. Rodriguez, 379 So.2d 1084 (La.1980); Schwegmann Brothers Giant Super Markets v. McCrory, Commissioner of Agriculture, 237 La. 768, 112 So.2d 606 (1959); State v. Guidry, 142 La. 422, 76 So. 843 (1917); State v. Syas, 136 La. 628, 67 So. 522 (1915). It has been consistently held that so long as the Legislature establishes by statute standards for the guidance of the executive or administrative body or officer, such that the body or officer is not vested with arbitrary discretion, there is no unconstitutional delegation of legislative authority to the executive branch of the government. State v. Rodriguez, supra. Yet there is no discussion in the majority opinion of whether La.R.S. 40:1471.9 does or does not provide adequate guiding standards for the Department of Public Safety. Rather, the majority rests its decision, that La.R.S. 40:1471.9 constitutes an unconstitutional delegation of legislative authority, on the fact that the constitution prohibits delegation of the legislative function. Is the majority implying that all such delegation, without exception, is constitutionally prohibited?
Thirdly, the majority unequivocally holds that La.R.S. 40:1471.18 is unconstitutional. La.R.S. 40:1471.18 provides the penal sanctions for violations of the regulations and for violations of the legislatively enacted statutes in that part. It also provides civil sanctions (fines and license revocation) for violating the statutes and regulations. The majority, nondiscriminately, holds the entire statute (La.R.S. 40:1471.18) unconstitutional. Thus we are left with no criminal penalty provisions for violating the legislatively enacted statutes and no civil penalties for violating either the statutes or the regulations. This results, presumably, because the majority has determined that providing criminal penalties for violating the regulations is unconstitutional.[1] But why is the rest of the statute struck with constitutional infirmity without reason or explanation?
Finally, the majority seems to find that all the regulations are vague, while expressly pretermitting the issue of whether LAC 17-11:14.6 is unconstitutionally vague. And the majority does the latter in the face of a ruling by the trial court that the regulation (LAC 17-11:14.6) was unconstitutionally vague and a decision by a majority of *376 this Court, on original hearing, that the regulation is not vague. (The decision of this Court on original hearing finding LAC 17-11:14.6 not vague, played no part in this Court's granting the rehearing.)
The majority's above discussed errors, in my view, start with their initial misstatement of the issue in the case. They state the issue as "whether LSA-R.S. 40:1471.9 and 40:1471.18 violate the separation of powers mandated in LSA-Const. Art. 2, § 2, by delegating to the director of public safety the authority to define various felonies." The Department of Public Safety is not authorized to define felonies. It is merely authorized to, and does, adopt regulations. It is the Legislature which, by statute, made criminal a violation of the regulations adopted by the Department. Whether the Department of Public Safety may constitutionally adopt regulations under the statutorily provided directives, standards and procedural safeguards is a separate and distinct issue from whether the Legislature may enact a statute which makes the violation of those validly enacted regulations a felony. The majority falls into error in not recognizing the difference between those concepts.
The only difference between those who voted to grant the rehearing and those who did not, as I perceived it, was disagreement over whether the otherwise permissible right in the Legislature to delegate authority to the Department was somehow limited in the instance where the Legislature has made it a felony, rather than perhaps a misdemeanor, to violate the regulations, or where they have imposed criminal rather than simply civil sanctions for the violation of the regulations.
If a majority of this Court disagrees with the resolution of that central issue on original hearing, then the majority should reverse it. However, this majority opinion invalidates all the explosive regulations, calling into question the delegation of any and all legislative authority to any executive body or officer, it invalidates the penalty provisions, both penal and civil, for violating the regulations, as well as the penalty provisions (both penal and civil) for violating the statutes,[2] and is totally unnecessary to a resolution of the issue before the Court in this case.
BLANCHE, Justice (dissenting).
The legislature may delegate the authority to a commission or department of government, which it has established by law, the authority to proscribe conduct (albeit it may amount to a felony) so long as it has established statutory standards and guidelines within which that body may act. The grant of power here was a constitutional delegation of legislative power to the Department of Public Safety regulating the transportation of explosives and contained a clear expression of legislative policy with sufficient standards to guide in the execution of that policy. Adequate procedural safeguards accompanied that delegation so as to protect against an abuse of discretion.
Neither is the Department of Public Safety a "local governmental subdivision", LSA Const.1974 Art. 6 § 9(A)(1) that has defined and provides for the punishment of a felony. It is the department of government which the legislature itself has established and to which it gave guidelines and standards for the promulgation of an explosive code.
I respectfully dissent.
NOTES
[1] "That he did on or about the 9th day of February, 1982, violate regulation LAC 17-11:14.6 promulgated under the authority of La. R.S. 40:1471.9, in that he did operate a conveyance transporting explosives and did leave such vehicle unattended at a time other than when actually making deliveries."
[2] La. Const. art. V, § 5 provides that a case is directly appealable to this Court if a law or ordinance has been declared unconstitutional.
[3] Because the case was disposed of on a motion to quash the facts have not been litigated. Thus we take the facts from the parties' briefs.
[4] La.R.S. 40:1471.9 provides:

The Secretary of Public Safety shall make, promulgate and enforce regulations setting forth minimum general standards covering manufacture, transportation (including loading and unloading), use, sale, handling and storage of explosives. Said regulations shall be such as are reasonably necessary for the protection of the health, welfare and safety of the public and persons possessing, handling and using such material and shall be in substantial conformity with generally accepted standards of safety concerning such subject matters. It is hereby declared that regulations in substantial conformity with the published rules and standards of the Institute of Makers of Explosives in relation to said subject matters shall be deemed to be in substantial conformity with accepted standards of safety concerning such subject matters. Such regulations shall be adopted by the Secretary of Public Safety only after a public hearing thereon pursuant to notice previously given to persons he shall deem interested therein (emphasis provided).
[5] This issue was not argued at the hearing on the motion to quash, perhaps because the trial judge found merit in defendant's first argument that the regulation was unconstitutionally vague. However, in the written motion to quash in the district court defendant argued that the bill of information should be quashed because it "fails to charge an offense which is punishable under a valid statute or regulation." Additionally, counsel for the state, in oral argument to this Court, acknowledged that the issue was presented to the trial court. Since we reverse the lower court's decision finding the statute unconstitutionally vague, before remanding for further proceedings we must address this general attack on the legislative scheme.
[6] For example, Aeronautics Law (La.R.S. 2:1 et seq), Environmental Affairs Law (La.R.S. 30:1051 et seq) and Surface Mining and Reclamation Act (La.R.S. 30:901 et seq).
[7] Professor Kenneth Culp Davis, in his Administrative Law Treatise, points out that courts have often upheld delegations under the "adequate guiding standards" test where there were virtually no expressed standards at all. For example, delegations have been upheld which were guided only by the following standards: "just and reasonable" [Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524 (1930)], "public interest" [New York Central Securities Corp. v. United States, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138 (1932)], "public convenience, interest, or necessity" [Federal Radio Commission v. Nelson Bros. Bond & Mortgage Co., 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166 (1933)], "unfair methods of competition" [Federal Trade Commission v. Gratz, 253 U.S. 421, 40 S.Ct. 572, 64 L.Ed. 993 (1920)], "reasonable variations" [United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932)]. He states that this result was imperative in view of the complexity of today's governmental undertakings. He concludes that a modern regulatory agency would be an impossibility if power could not be delegated with vague or non-explicit standards. Thus, the complexity of the issues has caused a need for the regulatory agencies, which the courts have recognized by upholding the delegations to the agencies. However, they do so by giving lip service to the adequate guiding standards test when in fact no such guiding standards exist.
[8] Citing with approval the state courts which have made the recognition that procedural safeguards must be considered along with expressed standards in these modern times, Davis made the following observation:

State courts are making a good deal of progress toward considering safeguards along with or instead of standards. A representative sample is Adams v. North Carolina Dept. of Natural and Economic Resources, 295 N.C. 683, 249 S.E.2d 402 (1978). The court did not abandon its requirement of standards but it emphasized safeguards: "We thus join the growing trend of authority which recognized that the presence or absence of procedural safeguards is relevant to the broader question of whether a delegation of authority is accompanied by adequate guiding standards." 249 S.E.2d at 411. The whole opinion is an outstanding one. Another court asserts: "Broad grants of legislative powers will be permitted where there are procedural and judicial safeguards against arbitrary, unreasonable or oppressive conduct of the agency." State v. Department of Industry, Labor and Human Relations, 77 Wis.2d 126, 252 N.W.2d 353, 357 (1977).
An excellent formulation: "The existence of standards is relevant in assessing the validity of delegation, but the existence of safeguards for those whose interest may be affected is determinative." Meyer v. Lord, 37 Or.App. 59, 586 P.2d 367, 371 (1978). Also: "The criterion for determining the validity of a delegation should be the totality of protection against arbitrariness." Bercot v. Oregon Transportation Commission, 31 Or.App. 449, 570 P.2d 1195, 1197 (1977). "[T]he presence of adequate procedural safeguards to protect against abuse of discretion by those to whom the power is delegated compensates substantially for the want of precise guidelines..." State v. Boynton, 379 A.2d 994 (Me.1977).
[9] Under La.R.S. 40:1471.18, the trial judge can impose a penalty ranging from a fine between two hundred fifty dollars and one thousand dollars to imprisonment from a minimum of one year to a maximum of five years, or both fine and imprisonment. In the instant case, defendant is charged with a rather minor violation of the regulations (at least in regard to its consequences) and, if upon remand defendant is tried and convicted presumably he will be sentenced accordingly. However, had the consequence of the violation been more severe, such as death or serious personal injury or significant property damage, the violation would certainly not be viewed as minor, and a more severe sentence would be appropriate. Whether the sentence is excessive, however, presents entirely different considerations from whether the delegation of authority to the administrative agency to enact regulations is constitutional.
[1] The only section of the statute which refers to the "standards" is 40:1471.9:

"The director of public safety shall make, promulgate and enforce regulations setting forth minimum general standards covering manufacture, transportation (including loading and unloading), use, sale, handling and storage of explosives. Said regulations shall be such as are reasonably necessary for the protection of the health, welfare and safety of the public and persons possessing, handling and using such materials, and shall be in substantial conformity with generally accepted standards of safety concerning such subject matters. It is hereby declared that regulations in substantial conformity with the published rules and standards of the Institute of Makers of Explosives in relation to said subject matters shall be deemed to be in substantial conformity with accepted standards of safety concerning such subject matters. Such regulations shall be adopted by the director of public safety only after a public hearing thereon pursuant to notice previously given to persons he shall deem interested therein."
[*] Bailes, J. sitting for Justice Marcus.
[1] LSA-Const. Art. V, § 5(D) provides:

"In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional...."
[2] The trial court decided that the charge was unconstitutionally vague. That question is pretermitted.
[3] See appendix to this opinion.
[4] These penalties are in addition to confiscation, LSA-R.S. 40:1471.17, and suspension or revocation of license or permit, LSA-R.S. 40:1471.13. The requirement in LSA-R.S. 40:1471.8 that a permit be required for the transport of explosives is not unconstitutionally vague. State v. de la Beckwith, 344 So.2d 360 (La., 1977).
[5] LSA-Const. 1812, Art. 1, §§ 1, 2.

"§ 1. The powers of the government of the State of Louisiana shall be divided into three distinct departments, and each of them be confided to a separate body of Magistracy vizthose which are Legislative to one, those which are executive to another, and those which are judiciary to another.
§ 2. No person or Collection of persons, being one of those departments, shall exercise any power properly belonging to either of the others; except in the instances hereinafter expressly directed or permitted."
[6] The one exception is found in the Constitution of 1868.
[7] The 1812 Louisiana Constitution was modeled on the Constitution of Kentucky. See 9 Tul.L.Rev. 244 at 245. Thomas Jefferson was the author of Art. 1 of the 1812 Louisiana Constitution. Both Jefferson and George Washington expressed concern about consolidation of the separate departments. "The spirit of encroachment tends to consolidate the powers of all the departments in one, and thus to create, whatever the form of government, a real despotism." Saint v. Allen, 126 So. at 554, 126 So. 548, quoting Washington's Farewell Address.
[8] The criminal code of Louisiana provides in LSA-R.S. 14:7 that at a crime is "that conduct which is defined as criminal in this Code, or in other acts of the legislature, or in the constitution of this state." The Reporter's Comment adds:

"This article makes it clear that the Code continues the tradition that the Louisiana criminal law is purely statutory, there being no other crimes than those defined in the Code or other statutes of the state. Crimes Act of 1805; State v. Robinson, 143 La. 543, 78 So. 933 (1918). It is intended to exclude from the designation `crime' all offenders denounced in municipal ordinances."
[9] Also see the discussions in State v. Morgan, 238 La. 829, 116 So.2d 682 (1960); National Bank of Commerce v. Louisiana State University, 206 La. 913, 20 So.2d 264 (1944); and City of Baton Rouge v. Shilg, 198 La. 994, 5 So.2d 312 (1941).
[10] 10 Wheat 1 at p. 43, 6 L.Ed. 253 at 263 (1825).
[11] See the Administrative Law Treatise of Professor Howard Culp Davis, Second Edition, 1978, Vol. 1, § 3.15 at p. 209.
[12] The National Conference of Commissioners on Uniform State Laws adopted a model State Administrative Procedure Act in 1946, revised it in 1961, and reenacted it in 1981. More than half the states, including Louisiana, have an administrative procedure act based, at least in part, on the Model Act. Louisiana adopted its Administrative Procedure Act in 1967; the Act has been the subject of continuing legislative revision.
[13] Essentially, the legislative review provided by the Louisiana Administrative Procedure Act is performed by oversight subcommittees. Compare Sections 3-203 and 3-204 of the 1981 Model Administrative Procedure Act which provide for a joint administrative review committee empowered to make recommendations to the full legislature. "[T]he stacking of oversight committees with members favorable to an agency or to the group it regulates is not unknown; this practice can forge agency-committee alliances which reinforce the capture of agencies by the interest groups they purport to regulate." 90 Harvard L.Rev. 1369 at 1418.
[14] LAC 17-11:9.14.
[15] LAC 17-11:6.3:054.
[16] LAC 17-11:13.1.
[17] Other offenses in the statute are irrelevant here.
[18] The two separate offenses are vaguely defined and interwoven in the statute. See State v. Peterman, 121 La. 620, 46 So. 672 (1908).
[19] See the original opinion, footnote 9.
[20] LSA-Const.1974, Art. 1, § 18:

"* * * After conviction and before sentencing, a person shall be bailable if the maximum sentence which may be imposed is imprisonment for five years or less; and the judge may grant bail if the maximum sentence which may be imposed is imprisonment exceeding five years. After sentencing and until final judgment, a person shall be bailable if the sentence actually imposed is five years or less; and the judge may grant bail if the sentence actually imposed exceeds imprisonment for five years."
[21] Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); United States v. Chadha, ___ U.S. ___, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).
[22] Davis, Administrative Law Treatise, Second Edition, 1978, Vol. 1, § 3:5 at page 166.
[23] R. Fuchs, "An Approach to Administrative Law," 18 N.C.L.Rev. 183 at 198 (1940).
[1] The majority seems prompted, at least in part, in arriving at this conclusion by the mistaken belief that defendant could be sentenced to over five years imprisonment. The majority seems to be under the impression that one can be sentenced to up to ten years in prison for "possession of explosives contrary to the regulations." This is erroneous. La.R.S. 40:1471.18 provides penal sanctions in two different instances only. The five to ten year imprisonment penalty is provided for "any person who manufactures, purchases, keeps, stores, possesses, distributes, or uses any explosive with the intent to harm life, limb or property." The one to five year sentence is provided for "any person who shall in an application for a license, or permit as herein provided, knowingly make a false statement, or who shall knowingly otherwise violate any provisions of this Part, or regulation promulgated pursuant to this Part." Contrary to the majority's understanding of the statute, there simply is no criminal penalty provided for the "possession of explosives contrary to the regulations." Furthermore, the bill of information under which this defendant is charged is quite explicit in the fact that the defendant is charged with violating a regulation "in that he did on or about the 9th day of February, 1982, violate regulation LAC 17-11:14.6," a crime which carries a maximum sentence of five years. Defendant is unquestionably not charged with the crime of possessing an explosive with the intent to harm life, limb or property, which carries the larger ten year maximum penalty.
[2] In State v. de la Beckwith, 344 So.2d 360 (La.1977), this Court upheld and applied La. R.S. 40:1471.18, insofar as it provides a criminal penalty for the violation of the explosives statutes, in affirming a five year sentence.